# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2014

Lyle W. Cayce
Clerk

————

No. 12-20763

————

SERGEANT MARK MCMANAWAY; DAVID RANCOURT; BRENT LASHER; JODY AISTROP; WILLIAM BICKELL; ET AL.,

Plaintiffs - Appellees

v.

KBR, INC.; KELLOGG, BROWN & ROOT SERVICES, INC; KBR TECHNICAL SERVICES, INC.; OVERSEAS ADMINISTRATION SERVICES, INC.; SERVICE EMPLOYEES INTERNATIONAL, INC.,

Defendants - Appellants

—————————

Appeal from the United States District Court for the
Southern District of Texas, Houston

—————————

ON PETITION FOR REHEARING EN BANC

Before STEWART, Chief Judge, KING, and PRADO, Circuit Judges.

ORDER:

Treating the petition for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is DENIED. The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED R. APP. P. and 5TH CIR. R. 35), the petition for rehearing en banc is DENIED.

In the en banc poll, five judges voted in favor of rehearing (Judges Jolly, Jones, Smith, Clement, and Owen), and nine judges voted against rehearing

(Chief Judge Stewart and Judges Davis, Dennis, Prado, Elrod, Southwick, Haynes, Graves, and Higginson).

ENTERED FOR THE COURT:

_____

UNITED STATES CIRCUIT JUDGE

JONES, Circuit Judge, dissenting from Denial of Rehearing En Banc, joined by SMITH, CLEMENT, and OWEN, Circuit Judges

The court has declined to reconsider en banc the panel's order dismissing this interlocutory appeal as improvidently granted. The appeal raised two questions: whether the case against KBR, a contractor literally on the battlefield in Iraq when these soldier plaintiffs were injured, involves nonjusticiable political questions; and whether KBR inherits FTCA-based preemption of claims "arising out of the combatant activities" of the military during wartime. 28 U.S.C. § 2680(j). The panel's dismissal order stands federal procedure on its head by implying that this case must nearly be tried before we can assess federal court jurisdiction and competence to hear it. Because both of these issues should have been resolved favorably to KBR, and that further trial proceedings impose on KBR and the U.S. military beyond the scope of federal court power, I respectfully dissent.

This tort suit was two weeks away from trial, after voluminous documentary and deposition discovery from the contractor and the United States military, when the district court denied these threshold defenses to KBR. A motions panel of this court accepted the trial court's 28 U.S.C. § 1292(b) certification of the issues. Full briefing and oral argument ensued-- for naught. The panel held that it could not decide justiciability under the political question doctrine without a trial court ruling on the law applicable to the tort suits (of plaintiffs from three states and Great Britain against KBR, a Texas-based defendant), and the panel would not rule on the combatant activities exception before justiciability. In a footnote, and somewhat at odds with the concern that choice of law had not been ruled on, the panel signaled

3

that the district court should have also certified for interlocutory appeal its refusal to designate the United States as a "responsible third party" ("RTP") under the Texas law of comparative negligence.[1] Whether the trial court will comply with the panel's order by (a) ruling on choice of law as to all these parties, (b) expanding or revising the treatment of the United States for comparative negligence assessment, and (c) certifying, or recertifying, the RTP issue, justiciability and the combatant activities exception is, at this late stage, guesswork. To any reasonable observer, however, an incredible amount of private, military and judicial resources will have been expended solely to determine if the suit can be heard in federal court.

The panel's order is inconsistent with our precedent and further exacerbates circuit conflicts on the cognizability of suits against contractors-on-the-battlefield.

## 1. Background

The plaintiffs are soldiers from National Guard units and the British Royal Air Force who were tasked to provide security and transportation relating to the restoration of the Qarmat Ali water treatment plant in southern Iraq following the allies' military occupation in 2003. KBR was awarded the restoration contract as part of the United States' plan to recommence Iraqi oil field production (Project Restore Iraqi Oil--"RIO"). During the project, insurgents targeted Qarmat Ali with looting, shooting and vandalism. The plaintiffs engaged the enemy as work proceeded. The plaintiffs assert that they were injuriously exposed to sodium dichromate, an irritant and carcinogen, while performing their duties and that KBR recognized and

---

[1] Had the government been so designated, *see* TEX. CIV. PRAC. & REM. CODE § 33.004, the jury would have had to formally assess a percentage of liability against the government despite its sovereign immunity from suit.

disregarded the danger of sodium dichromate contamination at Qarmat Ali. Their sole remaining cause of action is for negligence against KBR and its related companies.

KBR did not act in a vacuum. The district court acknowledged, even as it ruled against KBR's threshold arguments, that United States military decisions were deeply implicated in the plaintiffs' chemical exposure:

> The record here shows that the U.S. military was involved in the sodium dichromate exposure that allegedly caused Plaintiffs' injuries. As discussed above, the military contracted with KBR to restore Quarmat [sic] Ali and was responsible for assessing sodium dichromate hazards at Quarmat [sic] Ali prior to KBR's arrival. In addition, even after KBR was on site, the military was involved in detecting and responding to the presence of sodium dichromate at Quarmat [sic] Ali.

*McManaway v. KBR, Inc.*, 906 F.Supp.2d 654, 664 (S.D. Tex. 2012), *appeal dismissed*, No. 12-20763 (5th Cir. Nov. 7, 2013).

To fend off liability, KBR unsurprisingly intends to show that military wartime decisions were the proximate cause of the plaintiffs' chemical exposure including, *inter alia*, the decisions to (1) forgo an environmental assessment before restoration work commenced at Qarmat Ali; (2) require troops to secure the facility without fully assessing whether the site was free of environmental hazards; and (3) continue restoration work after the military became aware of potential contamination from this and other sources (*e.g.*, chlorine). The record is replete with evidence supporting these propositions.

This was the essential posture of the case when the panel refused to rule on the application of the political question doctrine and the combatant activities exception to the FTCA.

## 2. This Court's Precedent

In refusing to decide whether either the political question doctrine or the combatant activities exception bars federal adjudication of the plaintiffs' claims, the panel opinion creates tension with several of our precedents. First, it fails to heed the advice this court gave district courts confronted with various threshold defenses asserted in tort-on-the-battlefield cases: "Because the basis for many of these defenses is a respect for the interests of the Government in military matters, district courts should take care to develop and resolve such defenses at an early stage while avoiding, to the extent possible, any interference with military prerogatives." *Martin v. Halliburton*, 618 F.3d 476, 488 (5th Cir. 2010). Among numerous reasons courts should be reticent to submit military decisions to judicial review, the Government's interests in military matters reasonably include limiting its own expenditure of scarce resources on the un-military task of participating in lawsuits as well as reducing contractors' liability exposure for the sake of future procurement efforts. The panel's unenlightening explanation for remand, however, ensures there will be no early stage resolution of this case. The existence of a record ready for trial demanded and facilitated a final decision in this court.

Second, the panel decision unreasonably interprets *Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008), which recognized that a battlefield tort case is nonjusticiable under the political question doctrine where analysis of the Executive's war-time decision-making is compelled. *Id*. at 557-59. Federal courts are neither competent nor, under separation of powers principles, legally entitled to address such issues. *Lane* characterized causation as "the most critical element" of plaintiffs' tort claims "for political question analysis." *Id*. at 565. In *Lane*, the defendants intended to show that the plaintiffs' injuries were not caused by their negligence but by insurgents who attacked a

6

military convoy for which the United States Army provided inadequate security. To the extent the plaintiffs claimed negligence, *Lane* stated, their allegations "move precariously close to implicating the political question doctrine." *Id.* at 567.

The panel opinion overlooks *Lane*'s caution that cases involving competing claims of negligence by the United States military and a contractor are barred from federal court adjudication. Moreover, *Lane* does not hold that courts must make a choice of law determination in order to analyze a plaintiff's claim "as it would be tried."[2] Indeed, in that case, the district court had made no choice of law determination, and this court simply assumed the application of Texas law. Here, however, instead of focusing on how the plaintiffs' causation case would play out against the background of military orders implementing Project RIO at Qarmat Ali, the panel mentioned only the narrow question of choice of law. The panel opinion in this way further complicates *Lane*'s discussion of the political question doctrine, as there is often room for debate over the choice of law applicable to battlefield torts. But rather perversely, this panel does not even forthrightly hold that choice of law

---

[2] To determine whether the case was justiciable, *Lane* applied the framework set forth in *Baker v. Carr*, 369 U.S. 186 (1962), where the Supreme Court identified the following six factors as helpful to the political question inquiry:

> (1) "a textually demonstrable constitutional commitment of the issue to a coordinate political department;" (2) "a lack of judicially discoverable and manageable standards for resolving it;" (3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;" (4) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;" (5) "an unusual need for unquestioning adherence to a political decision already made;" (6) "or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

*Lane*, 529 F.3d at 558 (citing *Baker*, 369 U.S. at 217).

is determinative. Thus, not only does the panel opinion misinterpret *Lane*, but if the panel intended to adopt choice of law as a requisite for political question analysis in tort-on-the-battlefield cases, its opinion should have been filed as a precedential "published" opinion.[3]

Third, in holding that it is "imprudent" to discuss the combatant activities exception to the FTCA while the "jurisdictional" defense of the political question doctrine remains pending, the court ignored two of our precedents. In one of these, the court decided *both* the political question doctrine and the act of state defense. *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 954 (5th Cir. 2011).[4] Moreover, in *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012), this court upheld summary judgment based on the battlefield contractor's defense of statutory pre-emption while pretermitting a ruling on the political question doctrine. According to the cases, that either or both of these threshold defenses may be decided by the appellate court rests within its discretion. Deference to the policies behind these defenses, as recognized by our precedents, should have compelled the panel to rule.

3. **Sister Circuit Conflicts**

a. **Political Question**

While aspiring to decide nothing, the "unpublished" per curiam panel order here in fact decided that further litigation is required to decide if the plaintiffs' case, now ready for trial, can be adjudicated in federal court. As *Lane* observed, strategic decisions of the Executive Branch during wartime are

---

[3] Unpublished Fifth Circuit opinions issued on or after January 1, 1996, are not precedential. 5TH CIR. R. 47.5.4.

[4] *See also Harris v. Kellogg, Brown & Root Servs., Inc.*, 724 F.3d 458, 478 (3rd Cir. 2013) (discussing both political question doctrine and combatant activities exception).

an arena "in which the political question doctrine has served one of its most important and traditional functions." *Lane*, 529 F.3d at 558. Efficiently untangling Executive Branch decisions from review in court cases should be a high judicial priority. Until less than a year ago, other circuit courts had readily applied the political question doctrine to contractor-on-the-battlefield tort cases without express focus on choice of law issues. *See, e.g., Carmichael v. KBR*, 572 F.3d 1271, 1288 n.13 (11th Cir. 2009) (providing that the court's analysis "would remain the same regardless of which state's law applied"); *see also Taylor v. KBR*, 658 F.3d 402 (4th Cir. 2011) (dismissing on political question grounds without discussing choice of law); *Lane v. Halliburton*, *supra*. The evidence of sensitive military decisions persuaded these courts that such cases are not "typical negligence action[s]" where the fact-finder can "draw upon common sense and everyday experience" in determining whether a military contractor acted reasonably. *Carmichael*, 572 F.3d at 1289. *But cf. McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1359-62 (11th Cir. 2007) (holding that private contractor failed to demonstrate that claims against it required re-examination of a military decision).

Differences among the tort regimes of the United States should not affect political question analysis, which serves unique federal and constitutional concerns. A negligence claim in any jurisdiction requires proof of the same elements: duty, breach, causation and damages. Since causation is always a necessary element, no particular tort regime can make the problem go away. No matter the choice of law, the contractor defendant could present the same evidence that the United States' military was responsible for plaintiffs' injuries. As exemplified here, the questions whether KBR can include the U.S. as a responsible third-party under Texas law, or whether a sole proximate cause finding embraces merely sole cause, are beside the point. What matters

for political question purposes is whether the litigation will bring a non-justiciable political question before the court, requiring hindsight review of the wisdom of military decisions. In most contractor-on-the-battlefield cases in which some responsibility rests on military decisions, this will invariably be true; nothing is to be gained by scrutinizing the details of how the jury will assign responsibility to the military.

Despite this reasoning, the Third Circuit recently took the opposite view in a decision cited by the panel opinion. *Harris v. KBR*, 724 F.3d 458 (3d Cir. 2013), *petition for cert. filed*, No. 13-817 (U.S. Jan. 8, 2014). *Harris* holds that a choice of state law is necessary to assess whether claims or defenses in such litigation introduce a nonjusticiable political question. That *Harris* is impractical, unfair and inconsistent with the underlying rationale of the political question doctrine emerged clearly in a Fourth Circuit decision that adopted *Harris. In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326 (4th Cir. 2014), *petition for cert. filed*, No. ___ (U.S. Apr. 11, 2014). In *Burn Pit*, the court held that the trial court erroneously dismissed consolidated tort cases because KBR's causation defense did not implicate the political question doctrine unless (1) the military caused the service members' injuries, at least in part, and (2) the plaintiffs invoked a proportional liability legal system that allocates fault among defendants. The effect of this ruling is that a trial court presiding over suits filed in 42 states (and consolidated by the Judicial Panel on Multidistrict Litigation) may have to conduct a virtual nationwide analysis of tort law before determining which plaintiffs' claims are justiciable. As a result, some claims may be justiciable, while others are not, depending solely on differing states' laws.

Even if the Supreme Court were to decide that, indeed, courts must first ascertain the choice of state law to complete the political question analysis, at

least there would be a uniform decision-making apparatus and a way to hasten resolution of these cases. Now, among the circuit courts, there is no uniformity.

**b. Combatant Activities Exception**

This FTCA exception withdraws the waiver of sovereign immunity and preempts claims, including state law claims, "arising out of the combatant activities" of the military during wartime. 28 U.S.C. § 2680(j). The exception may apply to foreclose by means of preemption, though not sovereign immunity, suits against defense contractors. *Saleh v. Titan Corp.,* 580 F.3d 1, 9 (D.C. Cir. 2009) (applying Supreme Court's preemption analysis in *Boyle v. United Technologies*, 487 U.S. 500 (1988)).

Textually, this exception is broad. The phrase "arising out of" is well understood legally to be "among the broadest in law." *Al Shimari v. CACI International, Inc.*, 679 F.3d 205, 236 (4th Cir. 2012) (Wilkinson, J., dissenting). The Supreme Court has contrasted this broad brush exception with other more closely tailored FTCA exceptions "that bar suits arising out of a subset of harms associated with a particular area." *Id.* (*citing Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 489-90 (2006)). In a seminal case, the Ninth Circuit defined "combatant activities" to exclude recovery for "not only physical violence, but activities necessary to and in direct connection with actual hostilities." *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948). More recently, that court recognized that "the purpose of the exception . . . is to ensure that the government will not be liable for negligent conduct by our armed forces in times of combat." *Koohi v. United States*, 976 F.2d 1328, 1334 (9th Cir. 1992). This court followed *Johnson*'s definition of combatant activities in dismissing a lawsuit filed by a civilian contractor working in Saudi Arabia during the Persian Gulf War although the contractor was employed

outside the war zone. *Arnold v. United States*, 140 F.3d 1037 (5th Cir. 1998) (per curiam) (unpublished).

In recent years, circuit courts have divided over the scope of the exception as applied to civilian contractors. The D.C. Circuit proclaimed that the exception commands "the elimination of tort from the battlefield," and consequently devised a test that inquires whether a contractor's services are "integrated" with combatant activities and the extent to which the military retained command authority, *e.g.*, under its contracts with the civilian contractor. *Saleh*, *supra* at 9. The Ninth Circuit appears to limit the exception to foreclose any "duty of reasonable care . . . to those against whom force is directed." *Koohi*, *supra* at 1337. The Third Circuit adopted the *Saleh* test but denied preemption to a military contractor for a soldier's electrocution in a barracks the contractor built in Iraq. *Harris*, *supra* at 480-82. These inconsistencies are troubling in their own right, as they complicate the litigation of military contractor suits in all jurisdictions, like the Fifth Circuit, that have either not weighed in on the exception's scope or for inscrutable reasons, have chosen not to do so.

More generally, it makes no sense to render formulations of the exception that preserve civilian contractor tort liability in ways that would be inconceivable had the same battlefield-related activities been conducted by the military itself. As Judge Wilkinson noted, "[i]t is not our role to dismember this exception's text in order to determine when and to what extent torts can arise from combatant activities after all." *Al Shimari*, *supra* at 236-37. Further, "[i]t makes even less sense than in *Boyle* to shield the military from litigation for the battlefield activities of soldiers but not contractors." *Id.* Where, in *Boyle*, the Supreme Court was willing to exempt military contractors from liability under the contours of the discretionary function exception to the

FTCA, how much more should it acknowledge the shield Congress created in the combatant activities exception, especially given the explosion in the military's use of contractors to wage war. Judges Wilkinson and Niemeyer have discussed at length the constitutionally suspect, intrusive, and ultimately destructive consequences of imposing hindsight judicial oversight of military actions by means of tort law, even if the liability superficially falls on civilian contractors. *Al Shimari*, *supra* at 225-48 (Wilkinson, J., dissenting) and 258-64 (Niemeyer, J., dissenting).

Because hundreds, perhaps thousands, of lawsuits have been filed in the wake of the wars in Iraq and Afghanistan and are wending a tortuous way through courts all over the country, the scope of this exemption must be determined by the Supreme Court. At the very least, courts must be required to rule on this exception at the earliest possible stage of litigation. Because the point of the combatant activities exception is to free military actors engaged in such activities from "the doubts and uncertainty inherent in potential subjection to civil suit," *Saleh*, *supra* at 7, forcing them to participate, as in this case, in lengthy discovery, depositions, and interpretation of the contractual clauses seriously undermines the law.

But irrespective of the refined disagreements among the circuits, this case is a paradigm for application of the combatant activities exception. The trial court's ruling that Project RIO's goal of restoring the Qarmat Ali facility "was a foreign-policy-related goal rather than a combatant activity," *McManaway*, 906 F. Supp. 2d at 666 (quoting with approval *Bixby v. KBR, Inc.,* 748 F.Supp.2d 1224, 1246 (D.Or. 2010)), reveals deep, but not unusual, confusion about the exception's scope. This Army-led initiative sought to quell the growth of an insurgency and enable Iraq's economy to recover (and repay American costs) just after the 2003 invasion. The plaintiffs, all soldiers, were

deployed to Qarmat Ali to provide security. According to the RIO mission commander, Qarmat Ali "suffered significant damage from looting and sabotage," and on numerous occasions, work had to be shut down entirely at the site due to security concerns. Any injuries plaintiffs suffered were "necessary to and in direct connection with actual hostilities" in Iraq. *Johnson*, *supra*, at 770. From the contractor's standpoint, its mission was fully intertwined with that of the military, as the facility's restoration depended on coordination and collaboration between the Army Corps of Engineers and KBR. Especially for the remediation of environmental hazards, the tasks were joint, as the previously quoted portion of the district court's opinion plainly states. It is difficult to conceive how KBR's alleged negligence can be isolated and tried apart from an understanding of the "hot" zone in which KBR and the soldiers were operating.

Even a pinched reading of the combatant activities exception should shield KBR and, indirectly, the United States from jurors' state law-based second-guessing. The United States ultimately pays the judgment, if not by indemnifying KBR, then by having to pay ever-higher costs for private contractors who must be hired to fill vital gaps in military actions. The toll in a case like this, moreover, is not simply monetary, but ultimately strategic. How, in the future, must the military reckon the value of strategic operations like restoring a degraded water treatment plant, securing a chemical weapons factory, or reopening a hospital in which environmental hazards have accumulated? Must the costs of potential lawsuits against military contractors be included? Does there have to be a chain of evidence foreseeing possible adverse "tortious" events arising from the performance of the mission? Must paralegals or photographers accompany the mission to document hazards along the way? Planning and winning military conflicts is hard enough

14

without asking the military to bear the cost and associated inflexibilities imposed by anticipating *post hoc* lawsuits.

For all these reasons, the court, by condoning indecision here that amounts to a decision, has abandoned the restraint we ought to exercise when facing wartime conduct that we are constitutionally and statutorily forbidden and ill-suited to evaluate. I respectfully dissent from the denial of rehearing en banc.