# IN THE SUPREME COURT OF TEXAS

═══════════
No. 15-0932
═══════════

AMERICAN K-9 DETECTION SERVICES, LLC AND
HILL COUNTRY DOG CENTER, LLC,
PETITIONERS,

v.

LATASHA FREEMAN, RESPONDENT

═══════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
═══════════════════════════════════

JUSTICE DEVINE, joined by JUSTICE GUZMAN, dissenting.

Standards of review dictate appellate review. The standard here is extremely deferential to LaTasha Freeman, the nonmovant: we view the facts and pleadings in the light most favorable to her and must deny American K-9 Detection Services, LLC's (AMK9's) plea if a fact question about jurisdiction exists that also implicates the case's merits. *See Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226-28 (Tex. 2004). This includes when jurisdiction depends on a fact question about proximate cause. *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 929 (Tex. 2015) (denying plea to the jurisdiction when the allegations "generate[d] a fact issue" about "proximate cause"). AMK9's plea is based on its allegation that the Army at least partly caused Freeman's injuries; but Freeman alleges that AMK9, not the Army, proximately caused her injuries. This is a classic fact-question.

So long as this fact question remains, we cannot grant AMK9's plea. Yet the Court flips the standard of review on its head by viewing the evidence in the light most favorable to AMK9, the movant. The Court does this through heavy reliance on the pronouncements—some of which are dicta—of several federal courts. I am unconvinced by their reasoning. The U.S. Supreme Court has not endorsed their views on the political-question doctrine in proportionate-responsibility systems, and we are not otherwise bound by their holdings. I would instead hold that when a political-question doctrine claim depends on a causal finding, we cannot dismiss the suit while causation is disputed. Because the Court's dismissal contravenes well-established plea-to-the-jurisdiction jurisprudence, and because no other ground AMK9 or Hill Country Dog Center, LLC asserts can sustain the plea, I dissent.

## I. Jurisdiction over Freeman's claims against American K-9 Detection Services, LLC

### A. Political-Question Doctrine

AMK9 argues in its plea that we lack jurisdiction because the Army at least partly caused Freeman's injuries, thereby implicating the political-question doctrine. A plea to the jurisdiction is a dilatory plea that defeats a cause of action whether the claims have merit or not. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A defendant can use a plea to challenge jurisdiction based on the sufficiency of the plaintiff's pleadings or on the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 226. AMK9 challenges the jurisdictional facts. "[W]hether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is . . . a question of law" that we review de novo. *Id.*; *see also Tex. Nat'l Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). When the evidence is undisputed or does not raise a fact question

2

about jurisdiction, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228. But when the evidence (1) creates a fact question about jurisdiction and (2) implicates the case's merits, "the trial court cannot grant the plea" and the fact-finder must resolve the fact question. *Id.* at 227-28. In such situations, we determine whether a fact question exists by taking all evidence favorable to the nonmovant as true, indulging every reasonable inference and resolving any doubts in her favor. *Id.* at 228.

This review essentially mirrors our summary-judgment standard: after the defendant presents evidence that the trial court lacks jurisdiction—and when such evidence also implicates the case's merits—the plaintiff must show only that a jurisdictional fact is disputed to survive the plea. *Id.* This standard of review saves plaintiffs from having to "put on their case simply to establish jurisdiction" in response to a dilatory plea, which "should be decided without delving into the [case's] merits." *Bland*, 34 S.W.3d at 554. Otherwise, a plaintiff like Freeman "would be required to try [her] entire case" just to show jurisdiction. *Id.*

Here, Freeman alleges that AMK9 was negligent for leaving Kallie unattended, not properly training her or her handler, not keeping her under restraint, and not securing the kennel. Freeman does not allege that the Army or its kennel design caused her injuries. AMK9 alleges these things. Thus, Freeman's allegations dispute that the Army proximately caused her injuries. This proximate-cause issue is what potentially raises a political question because if the Army caused Freeman's injuries, we might have to evaluate the Army's military decisions as a responsible third-party. The political-question doctrine, however, bars this suit if and only if a political question—here, the

3

Army's military decisions—is "inextricable from the case." *Baker v. Carr*, 369 U.S. 186, 217 (1962).

The elements of proximate cause are cause-in-fact and foreseeability. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). "Because proximate cause is ultimately a question for a fact-finder," we must sustain AMK9's plea if Freeman's petition "'creates a fact question' regarding the causal relationship between [the Army's conduct] and the alleged injuries." *Ryder*, 453 S.W.3d at 929 (quoting *Miranda*, 133 S.W.3d at 228). AMK9 alleges that it had to use the Army's kennels, and that the Army's failure to place a top on these kennels at least partly caused Kallie's escape. Maybe so. But a juror might reasonably infer that, had AMK9 closed every kennel door, as well as the kennel building's outer door, the lack of a top would have been causally irrelevant.

Even if the Army was aware that this design might allow a dog to scale the internal dividers between kennel pens, that a successful escape was foreseeable to the Army is far from clear. As Freeman points out, the Army required AMK9 to close all of the kennel's doors and the kennel was inside a building. Had AMK9 closed either the kennel's or building's doors—as the Army required it to do—Kallie's escape attempt would have been futile. That arguably makes the foreseeability of her escape doubtful. And we resolve doubts in Freeman's favor. *See Miranda*, 133 S.W.3d at 228.

Furthermore, a juror could reasonably infer that an escape was as foreseeable to AMK9 as to the Army. In fact, because AMK9, not the Army, trained and handled Kallie, a juror could reasonably infer that AMK9 knew better than anyone whether Kallie might escape as she did. By

4

indulging every reasonable inference and resolving any doubts in Freeman's favor, a juror could find that Kallie's escape was not foreseeable to the Army and that AMK9's actions were the escape's cause-in-fact.

But no matter who proximately caused Kallie's escape, a juror could reasonably conclude that AMK9's allegedly negligent training was the attack's sole proximate cause. Freeman alleges that AMK9 trained Kallie such that she—contrary to the Army's contractual specifications—attacked without cause and without being ordered. Viewing these facts favorably to Freeman, a juror could reasonably conclude that a dog trained to the Army's specifications presents no attack threat to people like her. Thus, even if the Army partly caused Kallie's escape, a juror could reasonably conclude that an attack was not foreseeable to the Army and that AMK9's training was the attack's cause-in-fact. We must, therefore, conclude that a fact question about proximate cause exists.

Indulging every reasonable inference and resolving any doubts in Freeman's favor and taking all evidence favorable to her as true, a juror could reasonably conclude that AMK9's actions—and only AMK9's actions—caused the alleged attack. *See id.* at 228. AMK9, of course, disputes this. It alleges that the Army at least partly caused Kallie's escape and, therefore, this suit necessarily requires evaluating sensitive military decisions. We, however, cannot decide that issue while an underlying causal fact-question exists because that question affects whether the military's decisions are "inextricable from the case." *Baker*, 369 U.S. at 217. Thus, answering the political-question doctrine issue now, as the Court does, is premature.

5

The Court actually agrees that causation is a disputed fact-question here that can be decided only by a jury. *Ante* at ___ (citing *Miranda*, 133 S.W.3d at 227-28). Nevertheless, the Court is unmoved by that bar to its judgment. Despite that we cannot determine whether the doctrine is implicated without first resolving that fact question, the Court retorts that my analysis here, which simply applies our plea-to-the-jurisdiction standard, makes the doctrine "an irrelevance." *Ante* at ___. That is not true. If AMK9 is correct, it might get the suit dismissed under the doctrine, which is very relevant. We would not reduce the doctrine to an irrelevance by making AMK9 actually prove the facts of its defense. That makes the doctrine no more irrelevant than in any other suit where a potentially dispositive defense depends on a fact question that can be determined only through trial.

Furthermore, the Court's holding has a worrisome consequence to our jurisprudence. The holding essentially bars all tort suits where a military contractor—or any other defendant—is able to muster a mere allegation that a government actor whose decisions are insulated by the political-question doctrine partly caused the alleged harm. Even if the Court's view of that doctrine is otherwise right, its application here throws out cases where unproven, disputed factual allegations affect whether the doctrine is, in fact, implicated. That, in my view, throws the baby out with the bathwater.

For example, if a soldier sued a contractor for negligently making a tank hatch contrary to Army requirements such that it did not open properly, trapping him inside and injuring him, the contractor could obtain dismissal by merely alleging that the Army at least partly caused the hatch's failure. The Army, the contractor might argue, decided to park the tank in an area without a cover,

6

and this exposure to the elements caused the hatch to fail. Thus, the Army's wartime military decision partly caused the injury, implicating the political-question doctrine. If that truly did cause the hatch to fail, the contractor might be entitled to dismissal. But if the soldier disputes that the Army's actions caused the failure, instead alleging that the contractor's actions are the sole proximate cause, this causal fact-question should allow him to survive a plea to the jurisdiction. Otherwise, we deny all relief even when the soldier's allegations prove true.

The Court attempts to cabin this slippery slope, but in doing so shows why a jury needs to resolve the fact question here. The Court states that had "Kallie bit Freeman while being routinely exercised by her civilian-contractor handler," the attack "would have had nothing to do with the military." *Ante* at ___. But that does not solve the problem because in that scenario AMK9 has not alleged that the Army partly caused anything. Based on the Court's opinion here, AMK9 would be foolish not to make such an easy-to-manufacture allegation. For example, AMK9 could argue that the Army partly caused this attack by not providing enclosed yards for exercising these working dogs, thereby implicating the Army's equipment decisions. That causal allegation might be without merit, but that's the point—so might AMK9's actual allegation. The problem is that AMK9 is getting this case dismissed as a matter of law based on a disputed fact-question. The Court's scenario does not solve this problem because the scenario does not address this problem. Instead, the Court's scenario avoids the issue: how do we handle cases where a defendant's disputed causal allegation might implicate a military decision given that the allegation might be wrong? If AMK9 is wrong here, this case, too, has "nothing to do with the military." *Id.* That is why a fact-finder must resolve this fact question.

7

Because AMK9's jurisdictional plea and Freeman's case on the merits both depend on the same fact question—whether the Army or AMK9 proximately caused Freeman's injury—we should deny AMK9's plea, leaving this fact question for the fact-finder. *See Miranda*, 133 S.W.3d at 227-28.

The foregoing analysis should be enough to deny AMK9's plea. The Court, however, effectively side-steps this in holding that AMK9's proximate-cause defense would require the jury to impermissibly evaluate the Army's decisions about the kennel's design and construction. *Ante* at ___. That completely ignores the possibility that the Army might not be a cause at all. That move, however, is consistent with several federal cases. The Court endorses those cases, but their reasoning on that point cannot withstand scrutiny.

In *Harris v. Kellogg Brown & Root Services, Inc.*, the Third Circuit held that a sole-proximate-cause defense would not implicate the political-question doctrine because that dispute is "simply about who did what." 724 F.3d 458, 473 (3d Cir. 2013). But the court then concluded that, in a proportionate-responsibility system, determining whether the military was *a* proximate cause (rather than the *sole* proximate cause) would require a court to impermissibly second-guess military decisions. *Id.* at 474. *In re KBR, Inc., Burn Pit Litigation*, relying on *Harris*, also held that a proximate-cause defense does not make a suit nonjusticiable unless the military at least partly caused the plaintiffs' injuries and the suit was in a proportionate-responsibility system. 744 F.3d 326, 340-41 (4th Cir. 2014). The *Harris* court's explanation for this distinction was that, when determining partial cause, "there is simply no way to determine damages without evaluating military decisions" because the fact-finder "cannot decide the respective degrees of fault" between the

8

military and the contractor "without evaluating the decisions made by each . . . ." *Harris*, 724 F.3d at 474. But that does not explain the distinction.

Rather, this explanation skips a step. It incorrectly assumes that finding that the military partly caused the injury means finding that the military negligently caused it. The latter might be a political question, but the former is not. Determining "who did what" does not require second-guessing any decisions, military or otherwise. *See id.* at 473. Causal questions are objective, not normative. Objective questions do not inexplicably become normative just because Texas uses a proportionate-responsibility system. Holding otherwise conflates the distinction between causation and negligence.

Negligence assessments require multiple findings. In Texas, a court must find (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages proximately caused by that breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). No party is ever negligent merely by causing an event; something more is always required. This is true as a matter of basic tort law. *See* RESTATEMENT (SECOND) OF TORTS § 281 (1965) (Statement of the Elements of a Cause of Action for Negligence). A fact-finder also must determine that the party should have acted otherwise. This determination—whether the party should have acted as it did—is the potential political question. "[W]ho did what" is not. *Harris*, 724 F.3d at 473.

Nothing about our proportionate-responsibility system changes that a causal finding does not second-guess anything. And neither the Court nor its cited authorities explain how it could. Thus, resolving the factual dispute here—whether the Army or AMK9 proximately caused Freeman's injuries—does not raise a political question even if this suit eventually raises one because AMK9's

9

allegations prove true. AMK9's allegations have to actually be true first. This is why I cannot condone the Court's reasoning or its reliance on any case that holds that our proportionate-responsibility system somehow transforms a causal finding into a political question. The causal finding might raise a political question later in the suit, but the finding is not itself a political question.

We cannot avoid a fact question now just because a dispositive legal one might arise later. At no point in a factual who-did-what determination will the court or jury re-examine a military decision. *See id.* Why the Army made that decision and whether the decision was justified are irrelevant to that inquiry. The decision was made. All that matters is whether it caused Freeman's injuries, as AMK9 claims, or not, as Freeman claims.

This untenable distinction between causation defenses is rendered even more inexplicable when we consider that, had AMK9 argued only that the Army was the sole proximate cause, the Court would not dismiss this suit—that defense does not raise a nonjusticiable issue. *Ante* at ___ (citing *Harris*, 724 F.3d at 473; *In re KBR*, 744 F.3d at 340-41). Apparently, a defendant is better off admitting that he partly caused an injury than that he did not cause it at all, so long as he also asserts that the military partly caused the injury—*i.e.*, admitting partial fault will get your case dismissed; denying fault completely will not. That cannot be right, and is probably why the U.S. Supreme Court has not endorsed this view.

The Court dismisses this entire suit on the mere allegation that the Army might have at least partly caused Freeman's injuries. Because that causal fact-question is disputed, and because nothing about our proportionate-responsibility system mutates such a causal finding into a political question,

10

we should not yet hold that a political question is "inextricable from the case."  *Baker*, 369 U.S. at 217.  Until a political question is so intertwined, I cannot join the Court's judgment.

## B. Preemption under the Federal Tort Claims Act

AMK9 argues that the Federal Tort Claims Act preempts Freeman's Texas tort-law claims because the Act's combatant-activities exception applies here.  *See* 28 U.S.C. § 2680(j) (2012).  The Tort Claims Act is a limited waiver of sovereign immunity, 28 U.S.C. § 2674, and under the combatant-activities exception, the United States retains its immunity for "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war."  *Id.*  But "[u]nlike complete preemption, which is a jurisdictional issue," preemption based on the combatant-activities exception is "only an affirmative defense."  *McManaway v. KBR, Inc.*, 852 F.3d 444, 447 n.2 (5th Cir. 2017); *see also Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 467 n.3 (5th Cir. 2016), *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011).  "[N]o court has held[] that" preemption under this exception "constitutes complete preemption," and "[a]bsent complete preemption, whether a plaintiff's claims are preempted relates to the merits."  *Harris*, 724 F.3d at 463.  I see no reason to disagree with the federal circuits on this matter.

The combatant-activities exception does not preempt all state-law tort claims; it preempts only those claims "arising out of" combatant activities.  28 U.S.C. § 2680(j).  Such claims are only a small subset of potential tort claims, not the entire substantive field of tort claims or even the entire field of tort claims against contractors overseas.  *See Spear Mktg.*, 844 F.3d at 467 n.3.  Because the combatant-activities exception does not convert all such state-law tort claims into federal claims—*i.e.*, despite the exception, state-law tort claims continue to exist—the exception is merely

11

"ordinary" preemption, not "complete" preemption. *See GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 705 (5th Cir. 2012) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)); 14B Charles Alan Wright et al., Federal Practice & Procedure § 3722.2 (4th ed. 2016). AMK9's preemption argument is, therefore, only a defense. Even if the exception applies to Freeman's claims, the exception goes to the merits and, hence, cannot sustain a jurisdictional plea.

### C. *Westfall* **Immunity**

AMK9 next argues that it is entitled to *Westfall* immunity, a form of absolute official immunity. This argument was not one of AMK9's original bases for its jurisdictional plea. AMK9 originally argued derivative sovereign immunity, but on appeal has abandoned that ground in favor of *Westfall* immunity. Because *Westfall* immunity is immunity from suit, defendants can raise it for the first time on appeal. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015).

The original test for determining whether absolute official immunity applies comes from *Westfall v. Erwin*, 484 U.S. 292 (1988). That decision has been superseded by statute, *see* 28 U.S.C. § 2679(d) (2012), but the *Westfall* test is still used to determine when such immunity applies to nongovernmental entities for state-law tort claims. *Houston Cmty. Hosp. v. Blue Cross and Blue Shield of Texas, Inc.*, 481 F.3d 265, 269 (5th Cir. 2007)*; accord Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 174 (2d Cir. 2006); *see also Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1289 (D.C. Cir. 1997). Under this test, a nongovernmental entity is entitled to immunity when it makes discretionary decisions within the scope of its duties to perform an official government function. *Houston Cmty. Hosp.*, 481 F.3d at 269.

Here, AMK9 handles bomb-sniffing working dogs at a forward-operating base during war. These dogs work with active combat-units in the field, supplementing the military's own working dogs. Such overseas combat-related work that is integrated with the military is quintessentially governmental in nature. But Freeman is not alleging that AMK9 erred in any of its discretionary acts while performing these government functions. Freeman is claiming that AMK9 failed to do what the Army required—*i.e.*, to close all of the kennel's doors, to not leave any dogs unattended, and to train the dogs so that they would attack only when ordered or given cause. AMK9 did not have discretion to violate its contractual duties or the Army's policies. Indeed, official immunity is not meant "to protect an erring official, but to insulate the decision-making process" from litigation. *Westfall*, 484 U.S. at 295. The Army already prescribed AMK9's actions—the relevant official decisions were already made. Hence, Freeman is not challenging AMK9's discretionary decisions; she is challenging its failure to do what the Army already decided that AMK9 must do. Whether these alleged failures proximately caused Freeman's injuries is a separate question that goes to the merits. But for purposes of evaluating AMK9's immunity argument, AMK9 has failed to demonstrate that it is immune from suit by, as Freeman alleges, *not* doing what the Army required.

AMK9 points out, however, that it had discretion in how to train its dogs. True, but Freeman is not challenging AMK9's discretionary decisions in picking particular training methods. She claims that AMK9 failed to deliver working dogs that met the Army's performance-based contract requirements. Performance-based contracts "describe the work in terms of the required results rather than . . . 'how' the work is to be accomplished . . . ." *Saleh v. Titan Corp.*, 580 F.3d 1, 10 (D.C. Cir.

13

2009) (quoting 48 C.F.R. § 37.602(b)(1)). One of those requirements was that these dogs would attack only when commanded or when given cause. AMK9 therefore had discretion in how to train its dogs to meet these requirements, not whether its dogs met them. For that reason, this argument fails. Thus, *Westfall* immunity cannot sustain AMK9's plea to the jurisdiction.

### D. Defense Production Act

Finally, AMK9 argues that it is immune from suit because its contract with the Army is a "rated order" contract under the Defense Production Act. The Act authorizes the President to "require that performance under contracts or orders . . . which he deems necessary or appropriate to promote the national defense shall take priority over performance under any other contract or order . . . ." 50 U.S.C. § 4511(a) (Supp. IV 2016). The Act later states that "[n]o person shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this [Act] . . . ." *Id.* § 4557. Hence, the Act provides immunity to contractors who give their "rated order" contracts priority over other contracts or orders when their actions (or inactions) in doing so might otherwise subject them to liability.

Assuming that the Act applies here, it cannot sustain AMK9's jurisdictional plea. Even though the Act "plainly provides immunity," it does so "[b]y expressly providing a *defense* to liability." *Hercules Inc. v. United States*, 516 U.S. 417, 429 (1996) (emphasis added). The Act, therefore, provides immunity from liability, not suit. *See Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015) ("Immunity from liability is an affirmative defense . . . while immunity from suit bars suit against the entity altogether and may be raised in a plea to the jurisdiction.").

14

Thus, whether the Act applies to tort suits like this one or not, AMK9's Defense Production Act-based defense cannot sustain its jurisdictional plea.

*****

Because none of AMK9's arguments establish a lack of subject-matter jurisdiction, the trial court erred in granting AMK9's plea to the jurisdiction.

### II. Jurisdiction over Freeman's claims against Hill Country Dog Center, LLC

Hill Country Dog Center did not file a plea to the jurisdiction. It did file a Rule 91(a) motion, but the trial court did not rule on it. *See* TEX. R. CIV. P. 91(a). On appeal, Hill Country argues that, under Texas law, liability for a dog attack runs only to the owner at the time of the incident, not to the former owner. It also argues that no causes of action for negligently training a dog or for strict liability for a non-owner exist. Hence, Hill Country argues that the trial court was correct to find, *sua sponte*, that it lacked jurisdiction over Freeman's claims.

Whether these arguments are correct statements of Texas law or not, Hill Country provides no authority that they deprive the trial court of subject-matter jurisdiction. Its arguments, even if meritorious, offer immunity only from liability, not suit. Thus, the trial court erred in dismissing Freeman's claims against Hill Country based on a lack of subject-matter jurisdiction.

### III. Conclusion

Freeman alleges that AMK9's supervision and training of its dog was the cause-in-fact of her injuries. AMK9 alleges that the Army was partly to blame. Although the Court does not know whether either allegation is true, it nonetheless dismisses Freeman's claim against AMK9 because the Army *might* have contributed to causing her injuries. Even assuming that the Court otherwise

15

correctly applies the political-question doctrine to such partial-cause scenarios, I simply cannot understand how the mere allegation that the Army might have partly caused Freeman's injuries is sufficient to defeat her claim—a claim that does not even raise that issue. The Court ignores these deficiencies to sustain AMK9's jurisdictional plea notwithstanding the existence of unresolved factual questions necessary to the doctrine's application. Thus, I respectfully dissent.

_____
John P. Devine
Justice

OPINION DELIVERED: June 29, 2018

16