**Affirm and Opinion Filed November 22, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00733-CV**

**GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF TEXAS, AND THE STATE OF TEXAS, Appellants**
**V.**
**CLAY JENKINS, IN HIS OFFICIAL CAPACITY AS COUNTY JUDGE OF DALLAS COUNTY, TEXAS, Appellee**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-10101**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Nowell

The parties dispute whether the governor has the authority to preclude county judges from issuing orders that mandate the wearing of face coverings within counties in Texas in response to the COVID-19 disaster. Appellants Greg Abbott, in his official capacity as Governor of the State of Texas, and the State of Texas appeal the trial court's temporary injunction granted in favor of Clay Jenkins, in his official capacity as County Judge of Dallas County, Texas. Appellants make two arguments on appeal: (1) the trial court erred by denying Abbott's plea to the jurisdiction; and

(2) the trial court abused its discretion by granting Jenkins's request for a temporary injunction.

FACTUAL BACKGROUND

### A. Texas Disaster Act

The Texas Disaster Act of 1975, which appears as Chapter 418 of the Texas Government Code, is a comprehensive, detailed continuity-of-government framework that allocates powers, duties, and responsibilities across various levels of government and multiple agencies. *Ector Cty. All. of Businesses v. Abbott*, No. 11-20-00206-CV, 2021 WL 4097106, at *2 (Tex. App.—Eastland Sept. 9, 2021, no pet. h.) (mem. op.) (citing *Houston Cmty. Coll. v. Hall Law Grp., PLLC*, No. 01-20-00673-CV, 2021 WL 2369505, at *11 (Tex. App.—Houston [1st Dist.] June 10, 2021, pet. filed) (mem. op.)). The stated purposes of the Disaster Act are to, among other things, "clarify and strengthen the roles of the governor . . . and local government in . . . response to, and recovery from disasters"; "authorize and provide for cooperation in disaster mitigation, preparedness, response, and recovery"; and "provide an emergency management system embodying all aspects of predisaster preparedness and postdisaster response." TEX. GOV'T CODE ANN. §418.002(4), (5), (7).

The Disaster Act charges the governor with meeting "the dangers to the state and people presented by disasters," *id.*§ 418.011(1), and empowers the governor to declare a state of disaster by executive order if the governor finds a disaster has

–2–

occurred, *see id.* § 418.014(a). The Disaster Act further empowers the governor to issue executive orders, proclamations, and regulations, which "have the force and effect of law." *Id.* § 418.012.

On March 13, 2020, Abbott issued a proclamation pursuant to the Disaster Act certifying that "COVID-19 poses an imminent threat of disaster." For purposes of this appeal, the parties agree the COVID-19 pandemic is a disaster as that term is used in the Disaster Act. *See id.* § 418.004(1).

## B. Executive Order GA-38

In response to the COVID-19 disaster, Abbott issued Executive Order GA-38 (GA-38) on July 29, 2021. GA-38's stated aim is "protecting the health and safety of Texans, ensuring uniformity throughout Texas, and achieving the least restrictive means of combatting the evolving threat to public health by adjusting social-distancing and other mitigation strategies."

To that end, GA-38 states that it suspends the authority of local officials to issue contradictory orders and contains the following directives in paragraph 3:

> (b) In areas where the COVID-19 transmission rate is high, individuals are encouraged to follow the safe practices they have already mastered . . . but no person may be required by any jurisdiction to wear or to mandate the wearing of a face covering.
> . . .
> (g) As stated above, business activities and legal proceedings are free to proceed without COVID-l9-related limitations imposed by local governmental entities or officials. This paragraph number 3 supersedes any conflicting local order in response to the COVID-l9 disaster, and all relevant laws are suspended to the extent necessary to preclude any such inconsistent local orders. Pursuant to the legislature's command in Section 418.173 of the Texas Government Code and the State's

emergency management plan, the imposition of any conflicting or inconsistent limitation by a local governmental entity or official constitutes a "failure to comply with" this executive order that is subject to a fine up to $1,000.

Additionally, to "further ensure that no governmental entity can mandate masks," paragraph 4(a) of GA-38 states that "[n]o governmental entity, including a county, city, school district, and public health authority, and no governmental official may require any person to wear a face covering or to mandate that another person wear a face covering." Subsection (b) of the same paragraph expressly "supersede[s] any face-covering requirement imposed by any local governmental entity or official, except as explicitly provided." With the stated purpose of "further ensur[ing] uniformity statewide," paragraph 5 of GA-38 suspends sections 418.1015(b) and 418.108 of the Texas Government Code "[t]o the extent necessary to ensure that local governmental entities or officials do not impose any such face-covering requirement."

### C. Clay Jenkins's Order

On March 12, 2020, Jenkins declared a state of local disaster in Dallas County due to the imminent threat arising from COVID-19. The Dallas County Commissioners Court subsequently approved an Order Continuing Declaration of State of Local Disaster for Dallas County. Jenkins's subsequent orders state the commissioners court "authorized the Dallas County Judge to take such actions as are necessary in order to protect the health, safety and welfare of the citizens of Dallas County by the issuance of executive orders as necessary."

–4–

According to Jenkins's pleading filed on August 9, 2021, Texas lagged behind other states in vaccinations against COVID-19 and had among the highest total number of cases of coronavirus transmission. A more dangerous variant of the coronavirus, known as the delta variant, began surging in the summer of 2021 and, as a result, Dallas County faced "climbing cases and hospitals are reaching dangerous capacity issues that threaten lives." Jenkins alleged that if Dallas "County and schools are barred from engaging in mandatory mitigation practices like requiring face coverings, the Delta Variant will overwhelm hospitals, and people will die."

On August 11, 2021, Jenkins issued an order stating:

> WHEREAS, the transmission of COVID-19 has not dissipated but remains a significant threat to the health and safety of the Dallas County community and rates of infection are increasing at an alarming exponential rate and the number of people ending up in the hospital, ICU, or on ventilators is also dramatically rising despite efforts by local authorities to control the spread;
> . . .
> WHEREAS, a County Judge is authorized to protect the health, safety, and welfare of the citizens of Dallas County, including but not limited to, controlling ingress to and egress from a disaster area and controlling the movement of persons and occupancy of premises on an appropriate local scale in accordance with Section 418.108(g) of the Texas Government Code and his authority as Emergency Management Director[.]

The order mandated that all commercial entities in Dallas County providing goods or services directly to the public develop and implement health and safety policies. Those policies must, at a minimum, require "universal indoor masking for all

employees and visitors to the commercial entity's business premises or other facilities." Additionally, Jenkins ordered that face coverings would be required for all employees, contractors, and visitors when on the premises of a building or office owned or operated by Dallas County.

### D. Pending Litigation

This litigation began when J.J. Koch, the Dallas County Commissioner for District Two in Dallas County, sued Jenkins in Jenkins's official capacity. Koch, who is not a party to this appeal, alleges Jenkins made a "unilateral decision to require face coverings" during a meeting of the Dallas County Commissioners in contravention of GA-38, "which specifically denies any authority to Jenkins to make or enforce such rules." Koch sought a declaration that Jenkins's enforcement of a face-covering requirement is illegal.

In response, Jenkins filed a counterclaim against Abbott in his official capacity. Jenkins contends that Abbott's efforts, through GA-38, "to try to ban local officials from requiring masking within their localities are actions taken without legal authority and are in effect *ultra vires* acts by Governor Abbott." Requesting a declaratory judgment, Jenkins seeks declarations that: (1) "as the presiding officer of the governing body of Dallas County, following his declaration of a local state of disaster on March 12, 2020, Judge Jenkins has the full authority and discretion vested to him under [Texas Government Code section] 418.108(g), including the discretion to order mask mandates in the Commissioners Court or in public"; (2)

GA-38 paragraphs 3(b), 3(g), and (4) exceed the authority delegated to the governor and, therefore, are not lawful orders and are unenforceable; and (3) Texas Government Code section 418.016(a) does not authorize Abbott to suspend section 418.108(g) for the express purpose of preventing county judges or mayors from issuing orders that cope with the COVID-19 disaster by requiring face coverings, and Governor Abbott's attempt to do so in GA-38 paragraph (4)(b)(1) is statutorily impermissible and unenforceable. Jenkins also requested a temporary injunction to "maintain the status quo in which his authority within the County allowed him, without question, to protect its citizens" and restrain Abbott from acting to enforce sections of GA-38 that seek to ban face-covering mandates.

The Attorney General of Texas, on behalf of the State, then filed a verified plea in intervention and application for temporary and permanent injunctions prohibiting Jenkins from enforcing a face-covering requirement "for so long as GA-38 (or a future executive order containing the same prohibitions) remain [sic] in effect."

Following a hearing, the trial court granted Jenkins's request for a temporary restraining order (TRO) preventing Abbott[1] from enforcing paragraphs (3)(b), (3)(g), and (4) of GA-38. Appellants immediately appealed the TRO to this Court and then to the Texas Supreme Court. The Texas Supreme Court found the TRO

---

[1] The TRO restrained "Greg Abbott in his official capacity as Governor of the State of Texas as well as any of his agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with" Abbott.

altered the status quo and stayed "its effect . . . pending [the trial] court's hearing and decision on plaintiffs' request for a temporary injunction." *In re Abbott*, No. 21-0686, Order (Tex. Aug. 15, 2021).

On August 24, 2021, the trial court conducted a hearing on Jenkins's request for a temporary injunction. At the hearing, Jenkins presented evidence detailing the effects of the COVID-19 pandemic on Dallas County and the effectiveness of face-coverings to prevent the spread of COVID-19. He argued the governor does not have the power to suspend the authority given to local officials to manage local disasters under the Disaster Act. Conversely, appellants presented no evidence and argued Jenkins had no legal authority to issue a mandate for face coverings in contravention of GA-38. Following that hearing, the trial court entered an order granting the temporary injunction. The order finds that Jenkins showed a probable right to relief on the merits of his claims against appellants; unless appellants are temporarily enjoined, Jenkins and the residents of Dallas County whom he serves in his official capacity will suffer probable imminent and irreparable injury from the unencumbered spread of COVID-19; and the issuance of a temporary injunction would maintain the status quo between the parties. The temporary injunction restrains appellants[2] from enforcing paragraphs (3)(b), (3)(g), and (4) of GA-38 "to

---

[2] The temporary injunction restrains "Greg Abbott in his official capacity as Governor of the State of Texas, and each of his agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with him who receive actual notice of the Temporary Injunction, and the State of Texas, and each of its agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with the State of Texas who receive actual notice of the Temporary Injunction."

–8–

the extent those provisions prohibit Jenkins from requiring persons in Dallas County to wear, or mandate the wearing of, masks or face coverings in Dallas County to address the particularized local disaster in such county in light of, among other things, the number of infections, hospitalizations, and overall ripple effect on the healthcare system." This appeal followed.

### E. Role of the Judiciary

As our sister court recognized in a case presenting a similar issue:

> [T]he issue before this Court is not the wisdom or efficacy of the actions taken by either the Governor or the County Judge. A court is ill-equipped, nor empowered to make such difficult policy decisions. Rather, the only question that we are capable of answering is, under the text of the statute, who is the proverbial captain of the ship to make the difficult decisions embodied in these competing orders.

*State v. El Paso Cty.*, 618 S.W.3d 812, 819 (Tex. App.—El Paso 2020, no pet.), (mandamus dismissed Nov. 20, 2020). Similarly, Justice Guzman recently wrote about the Disaster Act's application to an election question in the era of COVID-19:

> [T]he Texas Constitution commits the balancing of competing interests and policy objectives to the executive and legislative branches of government. The judiciary's function is only to say what the law is, not what it should be. In our constitutional role, judges are not empowered to substitute our policy choices, preferences, or rules for those of the coordinate branches. So long as the law as written complies with the federal and state constitutions, our duty is to enforce it.

*Abbott v. The Anti-Defamation League Austin*, No. 20-846, 610 S.W.3d 911, 924 (Tex. Oct. 27, 2020) (per curiam) (Guzman, J., concurring) (footnotes omitted). When evaluating the parties' arguments, we remain mindful of the role of the judiciary.

### A. Plea to the Jurisdiction

We begin with the jurisdictional analysis.[3] Appellants argue Jenkins's claims against Abbott are barred by sovereign immunity, Jenkins lacks standing, and only the Texas Supreme Court—not a trial court—has authority to enjoin the governor.

A plea to the jurisdiction is a dilatory plea that contests the trial court's authority to determine the subject matter of the cause of action. *Tarrant Cty. Coll. Dist. v. Sims*, 621 S.W.3d 323, 327 (Tex. App.—Dallas 2021, no pet.) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). When a plea to the jurisdiction challenges the pleadings, we must determine if the pleader has alleged sufficient facts to demonstrate affirmatively the trial court's jurisdiction to hear the cause. *Id.* (citing *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015); *City of Plano v. Hatch*, 584 S.W.3d 891, 895 (Tex. App.—Dallas 2019, no pet.)). To make this determination, we look to the pleader's intent, construe

---

[3] The trial court's order granting the temporary injunction states that appellants' plea to the jurisdiction was not set for a hearing, has not been heard or determined, and remains pending before the court. However, this Court has previously held the grant of injunctive relief serves as an implicit denial of the plea to the jurisdiction. *Tex. Dep't of Family & Protective Servs. v. ASI Gymnastics, Inc.*, No. 05-09-01469-CV, 2010 WL 2764793, at *1 n.2 (Tex. App.—Dallas July 14, 2010, no pet.) (mem. op.). Further, even if the trial court did not implicitly deny appellants' plea to the jurisdiction, jurisdictional arguments can be raised for the first time on appeal. *See Am. K-9 Detection Servs., LLC v. Freeman*, 556 S.W.3d 246, 260 (Tex. 2018).

We also note that the Texas Supreme Court ordered the effect of the TRO in this case "stayed pending the [trial] court's hearing and decision on plaintiffs' request for a temporary injunction." Although appellants did not raise their jurisdictional arguments in the prior proceeding, the supreme court, like all courts, must consider its jurisdiction even when not raised by the parties. *Id.* ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal[,] it may not be waived by the parties, and it may— indeed, *must*—be raised by an appellate court on its own."). Accordingly, we conclude the supreme court resolved any jurisdictional questions by its order for further proceedings.

the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true. *Id.* (citing *Hatch*, 584 S.W.3d at 895). Whether a court has subject-matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

### 1.    *Sovereign Immunity*

Appellants argue Jenkins's claims against Abbott are barred by sovereign immunity. State employees acting in their official capacities have sovereign immunity from suit. *See Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904 (Tex. 2021). However, a claim may proceed against a governmental official in his official capacity if the plaintiff successfully alleges that the official is engaging in *ultra vires* conduct. *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). A plaintiff bringing an *ultra vires* claim must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 344–35 (internal quotation marks omitted). Retrospective monetary relief is generally barred; only prospective injunctive relief is available on an *ultra vires* claim. *Id*. at 345.

In this case, Jenkins alleges the Disaster Act delegates authority to county judges to declare local disasters and seek to mitigate those disasters. *See* TEX. GOV'T CODE ANN. § 418.108. His pleading states the Disaster Act does not authorize Abbott, an officer of the State, to limit a local county judge's actions; rather, the Disaster Act authorizes the governor to act only at the state level and establish state

–11–

policy. Abbott's actions, through GA-38, seeking to constrain Jenkins's power to manage the local disaster in Dallas County by precluding Jenkins from enacting and enforcing a face-covering requirement within Dallas County violate the Texas Government Code. Thus, Jenkins pleaded: "Abbott's 'ban' in GA-38 is an *ultra vires* act. He was not legislatively entitled to try to ban such actions by Judge Jenkins."

Construing Jenkins's pleadings liberally in favor of jurisdiction and accepting the allegations in the pleadings as true, Jenkins alleged sufficient facts that Abbott's ban constraining Jenkins's power to enforce a face-covering requirement within Dallas County, enacted through GA-38, was an *ultra vires* action. Jenkins challenges Abbott's past conduct and seeks to bring Abbott into prospective compliance with the Texas Government Code. Therefore, immunity does not bar the suit. *See Chambers-Liberty Ctys. Navigation Dist*., 575 S.W.3d at 344–45.

### 2. Standing

Appellants contend Jenkins lacks standing to sue Abbott. Standing is a threshold requirement to maintaining a lawsuit. *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). "A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman v. Williamson Cty*., 369 S.W.3d 137, 150 (Tex. 2012). The standing doctrine identifies suits appropriate for judicial resolution and assures there is a real controversy between the parties that will be determined by the judicial determination sought. *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 77 (Tex. 2015).

The Texas Supreme Court adopted the standard for standing articulated by the United States Supreme Court. To establish standing, a plaintiff must show: (1) an injury in fact, which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by the requested relief. *Heckman*, 369 S.W.3d at 154-55 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also In re Abbott*, 601 S.W.3d 802, 808 (Tex. 2020) (per curiam). The standing determination is made by looking to the plaintiff's pleadings, and the mere fact that a plaintiff may not ultimately prevail on the merits of the lawsuit does not deprive the plaintiff of standing. *Beasley*, 598 S.W.3d at 241.

Jenkins alleges he suffered an injury when Abbott, through GA-38, unlawfully suspended Jenkins's authority to enact and enforce a face-covering requirement within Dallas County. Jenkins's executive orders state he is authorized to take actions to protect the health, safety, and welfare of the citizens of Dallas County. At the temporary injunction hearing, Jenkins presented evidence showing mask mandates are critical to managing the COVID-19 pandemic and the healthcare system within his jurisdiction. Jenkins cannot fulfill his duties to protect the citizens of Dallas County and manage the COVID-19 pandemic within the county because of the provisions of GA-38.

Construing Jenkins's pleadings liberally in favor of jurisdiction and accepting the allegations in the pleadings as true, Jenkins alleged Abbott inflicted a concrete

and particular injury on him by constraining his statutory authority to implement mask mandates. Jenkins met the first element of standing by showing he has an actual injury. *See Abbott v. City of San Antonio*, No. 04-21-00342-CV, 2021 WL 5217636, at *8 (Tex. App.—San Antonio Nov. 10, 2021, no pet. h.) (concluding city and county making similar allegations met first element of standing).

Jenkins also meets the "traceability" element of standing. To establish "traceability," a plaintiff must show that the injury complained of must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61. The injuries Jenkins alleges arise from Abbott's promulgation of GA-38 in which he limited Jenkins's statutory authority to manage a local disaster. Had Abbott not issued an executive order limiting Jenkins's authority, Jenkins would have proceeded to act pursuant to his authority under the Texas Government Code. It is Abbott's proclamation itself that is the source of Jenkins's alleged injuries. Construing Jenkins's pleadings liberally in favor of jurisdiction and accepting the allegations in the pleadings as true, Jenkins has alleged injuries directly traceable to Abbott's action in promulgating GA-38. *See id.* (concluding city and county making similar allegations met traceability element of standing).

Finally, Jenkins pleaded facts that his injury would be redressed by the requested relief. Jenkins seeks a declaratory judgment that he has the statutory authority to order mask mandates and Abbott's suspension of his authority to do so

is an *ultra vires* act. Such declaratory relief, if granted, will redress Jenkins's injuries by allowing Jenkins to once again exercise his statutory authority, including his authority to impose mask mandates within his jurisdiction. Construing Jenkins's pleadings liberally in favor of jurisdiction and accepting the allegations in the pleadings as true, Jenkins alleged sufficient facts showing the requested relief would redress the alleged injury. *See id.* (concluding city and county making similar allegations met redressability element of standing).

Jenkins has alleged an actual concrete injury caused by Abbott's Executive Order, GA-38. Further, if Jenkins obtains the relief he seeks, the injury will be redressed. We conclude Jenkins has standing to sue Abbott. *See id.*

### 3. *Original Jurisdiction*

Appellants argue the trial court lacked jurisdiction because only the Texas Supreme Court—not a trial court—has authority to enjoin executive officers such as the governor. The basis for this argument is section 22.002(c) of the Texas Government Code. Section 22.002(c) states:

> Only the supreme court has the authority to issue a writ of mandamus or injunction, or any other mandatory or compulsory writ or process, against any of the officers of the executive departments of the government of this state *to order or compel the performance of a judicial, ministerial, or discretionary act or duty* that, by state law, the officer or officers are authorized to perform.

TEX. GOV'T CODE ANN. § 22.002(c) (emphasis added). In response, Jenkins argues his claim does not fall within the purview of section 22.002(c) because he does not seek to compel Abbott to act. Jenkins also argues the Legislature has no authority to

grant original jurisdiction to the supreme court in suits against the governor, and thus section 22.002(c) should be read to exclude the governor from the grant of original jurisdiction. For the purposes of this appeal we assume section 22.002(c) does not exclude the governor from the grant of original jurisdiction.

We agree with Jenkins that his claim against Abbott does not seek to order or compel an action; rather, he seeks to prevent Abbott from taking an action. Jenkins requests the trial court enjoin Abbott from enforcing portions of GA-38, thus preventing Abbott from performing what Jenkins deems to be *ultra vires* acts. *See Canales v. Paxton*, No. 03-19-00259-CV, 2020 WL 5884123, at *2 (Tex. App.—Austin Sept. 30, 2020, pet. ref'd) (mem. op.) ("A district court has original jurisdiction to issue an injunction prohibiting unlawful executive action.") (citing *Witt v. Whitehead*, 900 S.W.2d 374, 375–76 (Tex. App.—Austin 1995, writ denied) (holding that where state executive's delegation of responsibility was beyond officer's authority, district court "can grant permanent injunctive relief to prohibit enforcement" of that unlawful delegation); *Kaufman Cty. v. McGaughey*, 21 S.W. 261, 262 (Tex. App.—Austin 1893, writ ref'd) (holding that predecessor to section 22.002(c), identical in relevant respects, applied to orders compelling action that state executives "are authorized to perform," but not orders prohibiting acts that "have been, or will be, committed without and in excess of lawful authority")).

Because Jenkins does not seek to compel Abbott to perform any act or duty that Abbott is authorized to perform, but instead endeavors to enjoin Abbott from

performing an allegedly *ultra vires* act, section 22.002(c) of the Texas Government Code did not preclude the trial court from enjoining the governor in this instance.

## B.       Temporary Injunction

A temporary injunction must comply with the requirements of rule of civil procedure 683. *See* TEX. R. CIV. P. 683. To obtain a temporary injunction, the applicant must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Anti-Defamation League Austin,* 610 S.W.3d at 916.

Appellants assert Jenkins failed to demonstrate a probable right to relief and probable, imminent, and irreparable injury in the interim, and thus the trial court abused its discretion by granting Jenkins's request for a temporary injunction.

### 1.       Standard of Review

A reviewing court should reverse an order granting injunctive relief only if the trial court abused its discretion. *See id.* However, a court has no discretion to incorrectly analyze or apply the law. *Id.*

Statutory construction is a legal question that we review de novo. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Our primary focus in statutory interpretation is to give effect to legislative intent, considering the language of the statute, as well as its legislative history, the objective sought, and

the consequences that would flow from alternate constructions. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006); *see also Bosque Disposal Sys., LLC v. Parker Cty. Appraisal Dist.*, 555 S.W.3d 92, 94 (Tex. 2018) ("[T]he Legislature expresses its intent by the words it enacts and declares to be the law."); *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017) ("The text is the alpha and the omega of the interpretive process."). We consider the words in context, and not in isolation. *In re Office of the Atty. Gen. of Tex.*, 456 S.W.3d 153, 155 (Tex. 2015) (per curiam) ("Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases.").

When construing statutory language, "we presume the Legislature chose the statute's language with care, purposefully choosing each word, while purposefully omitting words not chosen." *In re CenterPoint Energy Houston Elec., LLC*, 629 S.W.3d 149, 158-59 (Tex. 2021) (quoting *In re Commitment of Bluitt*, 605 S.W.3d 199, 203 (Tex. 2020)). We must give effect to all words of a statute and not treat any language as surplusage. *Id.* at 159. We must not add words to the statute that are not there, and we must not ignore the words the Legislature has chosen, either, particularly in situations where we are being urged to read grants of authority from statutory silence. *See Newman v. Obersteller*, 960 S.W.2d 621 (Tex. 1997)(Abbott, J., dissenting) (the Legislature's omission of words from a statute is significant and

"[i]t is not the province of this Court to expand" a limited statutory provision by making inferences of authority from silence, "no matter the policy rationale behind such an expansion"); *see also City of San Antonio*, 2021 WL 5217636, at \*3 (same).

### 2. *Probable Right to Relief*

Appellants contend Jenkins failed to establish a probable right to relief for three reasons: (1) the Legislature designated the governor as the "commander in chief" for managing statewide disasters and GA-38's prohibition of face-covering mandates fits within the governor's authority; (2) county judges are agents of the governor during the pendency of a statewide disaster and an agent cannot countermand the objectives of the principal; therefore, Jenkins lacks authority to issue orders that contradict Abbott's; and (3) Abbott suspended the statute upon which Jenkins relies to craft local face-covering rules.[4]

### a. Commander In Chief

Appellants argue the Disaster Act deputizes the governor as the "commander in chief" of Texas's response to a statewide disaster, *see* TEX. GOV'T CODE ANN. § 418.015(c), and as the commander in chief, the governor has the power to "control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area," *id.* § 418.018(c). Appellants maintain that Dallas County falls within the declared disaster area and GA-38's prohibition on face-

---

[4] Appellants' brief also includes an argument about the constitutionality of the Disaster Act. The trial court did not determine the constitutionality of the Disaster Act, and no party is arguing it is unconstitutional in this appeal. Therefore, we do not consider the issue to be before us at this time.

–19–

covering mandates is within the governor's power to control the movement of persons and occupancy of premises in the area. Were a county judge to issue an order contradicting the governor's executive order, the governor's executive order would prevail because the Disaster Act empowers the governor to issue executive orders, proclamations, and regulations, which "have the force and effect of law." *Id.* § 418.012. Jenkins responds that the statutory language on which appellants rely identifies a limited role for the governor during disasters and does not "authorize the governor to act as an omnipotent leader in the disaster."

Section 418.015(c) states: "During a state of disaster and the following recovery period, the governor is the commander in chief of state agencies, boards, and commissions having emergency responsibilities." *Id.* § 418.015(c). This provision expressly limits the governor's commander-in-chief authority to state agencies, state boards, and state commissions. *See id.* Dallas County is none of these. Rather, Dallas County falls within the Disaster Act's definitions of a "political subdivision" and a "local government entity." *See id.* § 418.004(6) (defining "political subdivision" as a "county or incorporated city"), 418.004(10) (defining "local government entity" to include a county). The Disaster Act does not empower the governor to act as the commander in chief of political subdivisions, local government entities, or counties. Thus, we must conclude section 418.015(c) limits the governor's authority to act as commander in chief only to specific state entities. *See id*. § 418.015(c); *see also In re CenterPoint*, 629 S.W.3d at 158-59.

–20–

Appellants concomitantly discuss the effect of the governor's executive orders in relation to his authority under the Disaster Act. In the event of a *statewide* disaster, the governor "may control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area." TEX. GOV'T CODE ANN. § 418.018(c). However, in the event of a *local* disaster, the county judge or mayor of a municipality "may control ingress to and egress from a disaster area under the jurisdiction and authority of the county judge or mayor and control the movement of persons and the occupancy of premises in that area." *Id.* § 418.108(g). Appellants argue that section 418.012 is the tiebreaker between these two grants of authority. *See id.* § 418.012 (governor may issue executive orders, proclamations, and regulations, which "have the force and effect of law.").[5]

Appellants' construction of the Disaster Act requires that we assume a disaster may be either a statewide disaster controlled by a state-level authority such as the governor or a local disaster controlled by a local authority such as a county judge, but a disaster cannot simultaneously be both. The Disaster Act does not directly address this conundrum. Nonetheless, we cannot dismiss the likelihood that a disaster (such as the COVID-19 pandemic) can be both statewide and local, have disparate impacts throughout the numerous counties of the state, and necessitate different responses in different localities. In the event of a disaster that is both local

---

[5] Appellants also argue that GA-38 suspended section 418.108 and, therefore, Jenkins cannot rely on it. We address the issue of whether the governor has the authority to suspend section 418.018 below.

and statewide, the Disaster Act requires state and local level officials cooperate in their responses to the disaster. Indeed, the stated purposes of the Disaster Act include "clarify[ing] and stengthen[ing] the roles of the governor, state agencies, the judicial branch of state government, and local government in prevention of, preparation for, response to, and recovery from disasters" and providing for "cooperation in disaster . . . response." *Id.* § 418.002(4), (5). Through its stated purposes, the Disaster Act envisions authorities in multiple levels of government and in multiple branches coordinating their respected responses to the disaster.

Rather than seeking to coordinate and cooperate with local authorities during a disaster, Abbott maintains that, because section 418.012 states the governor's executive orders "have the force and effect of law," coordination and cooperation with local authorities is secondary to his statutory duty to respond to a disaster on a statewide basis. *See id.* § 418.012. While recognizing that section 418.012 states that executive orders have the force and effect of law, we cannot read the provision to empower the governor to issue orders that exceed his legal powers and duties; section 418.012 does not give the governor carte blanche to issue executive orders empowering him to rule the state in any way he wishes during a disaster.

The Disaster Act does not provide specific instructions explaining how authorities should proceed when, as here, the governor and a county judge issue contradictory orders pursuant to similar statutory grants of authority. The Disaster Act does, however, expressly provide a hierarchy when a county judge and a mayor

issue contradictory orders. Section 418.108(h)(2) states that when a city mayor and a county judge both use their inherent statutory authorities to manage certain disaster relief activities in their jurisdictions and orders issued by a mayor conflict with orders issued by a county judge, the orders of the county judge control over those of the mayor, even inside the boundaries of incorporated territory. *See id.* § 418.108(h). That section clearly resolves contemplated conflicts among two actors with concurrent jurisdiction and establishes an explicit chain of command. Abbott has not pointed us to a similar provision (and we have not found one) giving his orders priority over those of a county judge. The Legislature did not include similar language to evaluate competing orders between the governor and a county judge. The Legislature's silence is noteworthy. We must not add words into the text that the Legislature chose not to include. *See, e.g., In re CenterPoint*, 629 S.W.3d at 158-59. The Disaster Act does not explicitly state that executive orders issued by the governor preempt contrary laws issued by local entities. Had the Legislature intended the governor's executive orders to trump local laws, it would have stated as much, as it did for conflicts between a county judge and mayor.

As Chief Justice Rodriguez explained:

> Laws conflict with one another frequently, but there is no legal principle that automatically elevates certain laws above others as a matter of course. Certain laws preempt other laws not because there is an inherent hierarchy in government that says a law passed by a higher part of government necessarily preempts a law passed by a lower part of government. Laws preempt other laws because constitutions and other foundational texts create conflict-of-law schemes that establish

–23–

priority ranks among different types of valid laws.

*El Paso Cty.*, 618 S.W.3d at 832–33 (Rodriguez, J., dissenting). In this instance, there is nothing in the Texas Constitution giving executive orders preemptive power over laws passed by counties and cities, and section 418.012 does not provide such preemptive power either. *Id.* at 833 (Rodriguez, J., dissenting). "The grant of power in Section 418.012 is simply that—a grant of power. It does not make an executive order superior to a local order, nor does it make an executive [order] inferior to a local order. The Executive Order by its terms purports to preempt local laws, but Section 418.012 is silent on the issue of whether the Executive Order can in fact preempt those laws." *Id.*

The Disaster Act does, however, provide specific instances when a county judge's orders would prevail over the governor's orders. *Compare* TEX. GOV'T CODE ANN. § 418.018(a) ("The governor may *recommend* the evacuation of all or part of the population from a stricken or threatened area in the state if the governor considers the action necessary for the preservation of life or other disaster mitigation, response, or recovery.")(emphasis added) *with id.* § 418.108(f) ("The county judge or the mayor of a municipality may *order* the evacuation of all or part of the population from a stricken or threatened area under the jurisdiction and authority of the county judge or mayor if the county judge or mayor considers the action necessary for the preservation of life or other disaster mitigation, response, or recovery.")(emphasis added). To conclude the governor owns the tiebreaking authority, we would have to

ignore a stated purpose of the Disaster Act and provisions that delineate the responsibilities of the governor and county judges, among others.

Reading the Disaster Act as a whole, we conclude that the governor's executive orders under section 418.018(c) do not trump a county judge's order under section 418.108(g) as a matter of course.

### b. County Judges as Agents of the Governor

Appellants argue that Jenkins may not issue a face-covering mandate that conflicts with the governor's executive order because a county judge may only act as the governor's agent during a disaster. The Disaster Act designates "[t]he presiding officer of the governing body of an incorporated city or a county . . . as the emergency management director," and makes the "emergency management director[s] . . . the governor's designated agent[s] in the administration and supervision of duties under this chapter." *Id.* § 418.1015(a),(b). Applying agency law, appellants argue section 418.1015 creates a principal-agent relationship between the governor and a county judge, and as Abbott's agent, Jenkins cannot take actions that are inconsistent with GA-38.[6] In response, Jenkins argues, section 418.1015 expands rather than restricts a county judge's power, and his power to issue a local mask mandate does not stem from section 418.1015, but instead from section 418.108(g).

---

[6] We do not reach the question of whether the term "agent" as used in section 418.1015 creates a principal-agent relationship.

Section 418.1015 does not limit a county judge's role to that of the governor's agent during a disaster. Appellants' reliance on section 418.1015 ignores the delegation of power to county judges pursuant to section 418.108. If county judges could only act as the governor's agents during a statewide disaster, then, to avoid being surplusage, section 418.108 would need to state it does not apply in the event of a statewide disaster. But it does not. "Unlike Section 418.1015(b), which directly ties the exercise of a county judge's power to gubernatorial authority, none of the subsections contained in Section 418.108 frame a county judge's authority in relation to the Governor; the subsections describe the powers of local authorities to act on their own." *El Paso Cty.*, 618 S.W.3d at 836 (Rodriguez, J., dissenting). Section 418.108 solely addresses the inherent authority county judges and mayors possess to manage disaster areas under their jurisdictions and to declare disasters and act autonomously under certain enumerated circumstances without the need to seek preapproval from the governor. *Id.* The Legislature's exclusion of the governor from section 418.108 illustrates the Legislature did not intend to tether this power of local officials to the governor.

Reading section 418.108 as a whole, and comparing section 418.108 to section 418.1015, we conclude section 418.1015 expands rather than constricts a county judge's authority; section 418.1015 does not restrict a county judge to acting only as the governor's agent during a disaster. Thus, Jenkins could issue "his order under his own freestanding, autonomous inherent statutory authority granted by

–26–

Section 418.108(g), unfettered by any concerns he was acting as the Governor's agent." *Id.*

### c. Suspension of Section 418.018

To appellants, our analysis above would be unavailing because they claim Abbott suspended Jenkins's authority under section 418.018. Paragraph 5(a) of GA-38 states that it "invokes the Governor's statutory power under section 418.016(a) of the Government Code to suspend section 418.108" "to the extent necessary to ensure that local governmental entities or officials do not impose any such face-covering requirements" and "to the extent necessary to ensure that local officials do not impose restrictions in response to the COVID-19 disaster that are inconsistent with this executive order."

Abbott's March 13, 2020 proclamation certifying that "COVID-19 poses an imminent threat of disaster" triggered several statutory gubernatorial powers, including, as relevant here, the governor's power to "suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders or rules of a state agency if strict compliance with the provisions, orders, or rules would in any way prevent, hinder, or delay necessary action in coping with a disaster." *See* TEX. GOV'T CODE ANN. § 418.016(a).

Jenkins responds that section 418.016(a) did not empower the governor to suspend section 418.108 and, by attempting to do so, Abbott exceeded his authority. In the trial court, Jenkins argued Abbott could not suspend section 418.108 because

(1) section 418.108 is not a "regulatory statute" that "prescribes procedures"; (2) section 418.108 does not concern the "conduct of state business"; and (3) Jenkins's reliance on section 418.108 to impose a face-covering mandate does not "prevent, hinder, or delay necessary action in coping with a disaster." Appellants claim these arguments do not have merit.

Appellants rely on *Abbott v. Anti-Defamation League Austin,* in which the supreme court stated the governor is not required to prevent the transmission of COVID-19 at all costs. *See* 610 S.W.3d at 918. "Nothing in the [Disaster] Act suggests any limitation on the Governor's ability to consider valid policy goals, such as encouraging economic recovery, preserving constitutional rights, or promoting ballot integrity." *Id.* Appellants argue that, through GA-38, Abbott seeks to balance a variety of competing considerations, including "the ability of Texans to preserve livelihoods" and "protecting lives" through "the least restrictive means of combatting the evolving threat to public health." They assert Abbott could have concluded that Jenkins's efforts to impose a face-covering mandate would "prevent, hinder, or delay [Abbott's] necessary action in coping with a disaster."

If we assume for purposes of this argument that GA-38 balances the variety of considerations that appellants outline,[7] we still must consider whether a county judge's face-covering mandate "prevent[s], hinder[s], or delay[s] necessary action

---

[7] Appellants did not present evidence at the temporary injunction hearing to show GA-38 seeks to achieve or does achieve this balance.

in coping with a disaster." Interestingly, appellants do not present any argument about how a face-covering mandate would impede their ability to cope with this disaster. Unlike the other questions we consider today, this is a question of fact, and we must determine whether the trial court abused its discretion by concluding that Jenkins showed a probable right to the relief sought on this issue.

During the temporary injunction hearing, the trial court heard several hours of testimony and was provided hundreds of pages of exhibits to consider. The evidence presented by Jenkins shows that masks are the most effective nonpharmacological tool for reducing the transmission of COVID-19. Masks reduce viral loads for people who come into contact with COVID-19 and help prevent disease. Improving the population's compliance with masking will result in lower transmission within the community. However, when wearing face coverings is voluntary rather than mandatory, the level of compliance is not high enough to reduce the transmission rate. Additionally, economists have determined that failing to minimize the transmission of COVID-19 could result in preventable losses to the economy through reduced employment and decreased productivity.

The temporary injunction record also includes the executive order that Abbott issued on July 2, 2020 (Executive Order 29). Executive Order 29 required every Texan (with specific exceptions) to wear a face covering when inside a commercial entity or other building or space open to the public. In Executive Order 29, Abbott proclaimed:

WHEREAS, I have joined the medical experts in consistently encouraging people to use face coverings, and health authorities have repeatedly emphasized that wearing face coverings is one of the most important and effective tools for reducing the spread of COVID-19; and

WHEREAS, given the current status of COVID-19 in Texas, requiring the use of face coverings is a targeted response that can combat the threat to public health using the least restrictive means . . .; and

WHEREAS, wearing a face covering is important not only to protect oneself, but also to avoid unknowingly harming fellow Texans[.]

Not only has Abbott acknowledged that wearing face covering is "one of the most important and effective tools for reducing the spread of COVID-19," he also proclaimed that wearing face coverings is one of "the least restrictive means" of combating the threat to public health. The evidence Jenkins presented at the temporary injunction hearing supported Abbott's proclamations in Executive Order 29 and showed that mandatory mask requirements would reduce the viral transmission rate and prevent additional economic losses.

Based on the evidence in the record, the trial court acted within its discretion to conclude that Jenkins demonstrated a probable right to relief on the ground that Abbott lacked authority to suspend section 418.108 because imposing a face-covering mandate does not prevent, hinder, or delay necessary action in coping with a disaster.[8] Arguably, the evidence shows the opposite—that by imposing a face-

---

[8] Our sister court recently reached the same conclusion, albeit on different legal grounds. *See City of San Antonio*, 2021 WL 5217636, at *6 ("Applying the plain language of the [Disaster] Act, we conclude

covering mandate, Jenkins furthered Abbott's stated goals to preserve livelihoods and protect lives through the least restrictive means available.

Because we conclude Jenkins met his burden to show his imposition of a face-covering mandate does not prevent, hinder, or delay necessary action in coping with a disaster, we need not consider whether any section of the Disaster Act is a regulatory statute prescribing procedures for the conduct of state business.

### 3. *Irreparable Harm*

Appellants argue the trial court's balancing of the equities "went awry" because the trial court "ignored the interests of the Governor and the State in enforcing the law and ensuring the State has an orderly, efficient, and uniform response to the COVID-19 pandemic." Because an injunction is an equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities. *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 477–78 (Tex. App.—Dallas 2010, no pet.) (citing *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 220 (Tex. App.—Dallas 2005, no pet.); TEX. R. CIV. P. 693 (principles of equity shall govern proceedings in injunctions when the same are not in conflict with rules or statutes)).

---

the City and County demonstrated a probable right to relief that the Governor's power to suspend laws, orders, and rules under section 418.016(a) does not include the power to prohibit face-covering mandates that local governments may adopt to respond to public-health conditions or the power to suspend public-health statutes authorizing local governments to act for the benefit of public health.").

Appellants assert the trial court "wholly failed to consider the irreparable harm that will be visited upon the State by issuance of this injunction"; that irreparable harm stems from the injunction preventing the governor from carrying out his duties as commander in chief, which "frustrate[es] the State's interest in enforcing State law." However, as discussed above, the Disaster Act does not support appellants' argument that the governor's authority to act as the commander in chief during a disaster includes acting as the commander in chief of individual counties in Texas. As is relevant here, Abbott lacks legal authority to act as he attempted. Instead, by endeavoring to exercise power beyond that given to him in the Disaster Act, he attempted to infringe on Jenkins's powers. As the trial court concluded, it is Jenkins who would be harmed if the injunction did not issue.

Further, appellants did not present any evidence to the trial court at the temporary injunction hearing, including evidence about how the issuance of a temporary injunction would adversely impact the State. Appellants instead argued the issue was purely a legal one. Jenkins, however, presented the previously discussed evidence at the hearing. Jenkins's evidence showed that a universal masking requirement is a better alternative for mitigation of the pandemic than voluntary, individual choice masking. Thus, when asked to balance the equities, the only evidence the trial court was left to consider demonstrated how face coverings reduce transmission of COVID-19 and mitigate its effects.

Following the hearing, the trial court found that, unless appellants are enjoined,

> County Judge Jenkins and the residents of Dallas County whom he serves in his official capacity, will suffer probable imminent and irreparable injury through County Judge Jenkins being precluded from exercising his authority, as a County Judge who has declared a local state of disaster in Dallas County, to require persons in Dallas County to wear, or mandate the wearing of, masks or face coverings in Dallas County to reduce the spread of the COVID-19 virus, particularly the highly transmissible delta variant, which threatens to overwhelm the capacity of the healthcare system in Dallas County and result in increased hospitalizations and deaths in Dallas County and result in increased hospitalizations and deaths in Dallas County.

Based on our interpretation of the parties' respective authority under the Disaster Act and the evidence presented at the temporary injunction hearing, we conclude the trial court did not abuse its discretion when reaching this conclusion. *See City of San Antonio*, 2021 WL 5217636, at *7 (reaching same conclusion based on facts presented to trial court at temporary injunction hearing).

### 4. Status Quo

Appellants argue the temporary injunction "upended—rather than preserved—the status quo" because the last actual, peaceable non-contested statute preceding the controversy was GA-36, which was materially similar to GA-38 and prohibited localities from imposing mask requirements. A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. Status quo is defined as "the last, actual, peaceable, non-contested status which preceded the pending controversy." *Pierce v.*

–33–

*State*, 184 S.W.3d 303, 308 (Tex. App.—Dallas 2005, no pet.) (quoting *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004)). However, "continuation of illegal conduct cannot be justified as preservation of the status quo." *Id*. When the court determines the law is being violated, the court has a duty to restrain that violation. *See id.*

The trial court found that the issuance of the temporary injunction will maintain the status quo between the parties by returning Jenkins to the position he was in before GA-38 restrained his local response to the resurgence of COVID-19 infections and hospitalizations in Dallas County due to the highly contagious delta variant. We have determined that Jenkins has a probable right to relief on his claim that Abbott's actions are *ultra vires* and Abbott has no authority to act unilaterally to ban local mandates for face coverings. Thus, the status quo cannot be the governor's prior executive order if that order contained language to a similar effect. Because the preservation of the status quo could not as a matter of law include the continuation of actions in violation of and beyond the scope of authority granted in the Disaster Act, we conclude the trial court did not abuse its discretion by imposing a temporary injunction to prevent such conduct. *See City of San Antonio*, 2021 WL 5217636, at *7 ("Enjoining enforcement of the Governor's Executive Order GA-38 is necessary because allowing continued enforcement of the order would be unlawful.").

CONCLUSION

We affirm the trial court's August 25, 2021 order granting Jenkins's request for a temporary injunction.


210733f.p05                              /Erin A. Nowell//
                                         ERIN A. NOWELL
                                         JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GOVERNOR GREG ABBOTT, IN HIS OFFICIAL CAPACITY, AND THE STATE OF TEXAS, Appellants

No. 05-21-00733-CV     V.

CLAY JENKINS, IN HIS OFFICIAL CAPACITY, Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-21-10101. Opinion delivered by Justice Nowell. Justices Osborne and Pedersen, III participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's August 25, 2021 order granting the request for a temporary injunction sought by Clay Jenkins, in his official capacity.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 22nd day of November, 2021.