**Opinion issued August 20, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-18-00980-CV**

————————————

**IMT PAVILION III LP AND INVESTORS MANAGEMENT TRUST REAL ESTATE GROUP, INC. D/B/A IMT RESIDENTIAL, Appellants**

**V.**

**VICTOR MENDEZ, FOR HIMSELF AND ALL OTHERS SIMILARLY SITUATED, Appellee**

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-76253**

---

## MEMORANDUM OPINION

This interlocutory appeal arises from a landlord–tenant dispute about allegedly unlawful water-billing practices. Victor Mendez, for himself and all others similarly situated, sued the landlord defendants, IMT Pavilion III LLP and Investors

Management Trust Real Estate Group, Inc., doing business as IMT Residential. In the opinion that follows, we collectively refer to the landlord defendants as IMT.

The trial court certified two classes, and IMT appeals from this order.

A prior panel of this court affirmed the trial court's class-certification order. Later, the Supreme Court of Texas vacated our judgment without respect to the merits and remanded for us to reconsider the appeal in light of three recent decisions:

- *Mosaic Baybrook One v. Simien*, 674 S.W.3d 234 (Tex. 2023);

- *Mosaic Baybrook One v. Cessor*, 668 S.W.3d 611 (Tex. 2023); and

- *Am. Campus Cmtys. v. Berry*, 667 S.W.3d 277 (Tex. 2023).

IMT and Mendez have filed supplemental briefs addressing these decisions, and IMT has also filed a motion to dismiss the suit for lack of jurisdiction.

We deny IMT's motion to dismiss the suit for lack of jurisdiction. On the merits and in light of the supreme court's decisions, we reverse the trial court's certification order and remand for further proceedings consistent with our opinion.

**BACKGROUND**

Mendez was a tenant at the Pavilion Place apartment complex in Houston for several years. During his tenancy, IMT Pavilion owned this complex and IMT Residential managed it. IMT Residential is one of the largest corporate landlords in the country, acting as landlord at properties owned by various IMT-affiliated

2

companies. In its role as landlord, IMT Residential makes all decisions about apartment operations, including how tenants are billed for water and wastewater.

The trial court certified two classes. The members of these two classes are tenants at three apartment complexes operated by IMT Residential in Texas: IMT Pavilion Place in Houston, where Mendez resided; IMT Chimney Rock, also in Houston; and IMT Seville Uptown, in Dallas. At all three apartment complexes, IMT Residential allocates its monthly water and sewer utility bills to the tenants.

At these three apartment complexes, IMT imposed a monthly $3 fee labeled as a "utility service fee." According to IMT, this fee covered billing costs IMT incurred through its own billing company, Community Conservation Solutions, which performs residential utility billing services for IMT regarding water and sewer costs. Like every other tenant at Pavilion Place, Mendez paid the uniform $3 fee every month. The same $3 fee was charged at the other two apartment complexes.

Public Utility Commission rules prohibit charging tenants for water and sewer service unless a given charge was first assessed by a retail public utility. Among these rules, one provides that charges billed to a tenant for allocated utility service "may only include bills for water or wastewater from the retail public utility and must not include any fees billed to the owner by the retail public utility for any deposit, disconnect, reconnect, late payment, or other similar fees." 16 TEX. ADMIN. CODE § 24.281(a). Mendez contends that IMT violated this rule by using the $3

"utility service fee" to recoup the cost of unrelated administrative overhead, alleging that the rule in question forbids residential landlords from passing along to tenants expenses that are unrelated to water and sewer service as water or sewer charges.

When Mendez filed suit, the Texas Water Code authorized a private right of action in favor of tenants who paid overcharges billed by their landlord in violation of Public Utility Commission rules regarding nonsubmetered master metered utility costs. The statutory provision in question, formerly codified in section 13.505 of the Water Code, provided that if an apartment owner violated a commission rule regarding "nonsubmetered master metered utility costs," the tenant could "recover three times the amount of any overcharge, a civil penalty equal to one month's rent, reasonable attorney's fees, and court costs," excepting that the owner would not be liable for the civil penalty if it proved "the violation was a good faith, unintentional mistake." Act of May 13, 2013, 83rd Leg., R.S., ch. 171, § 83, 2013 Tex. Gen. Laws 772, 809–10 (amended 2017) (current version at TEX. WATER CODE § 13.505).

In addition to the alleged violation concerning the $3 "utility service fee," Mendez alleges that IMT violated additional Public Utility Commission rules at the two Houston apartment complexes, IMT Pavilion Place and IMT Chimney Rock. These additional rules concern registration with the commission and leak audits.

Before an apartment owner may pass along to tenants water and sewer costs, the owner must satisfy certain conditions established by the legislature and

4

commission. One of these conditions requires the owner to register with the commission. *See* 16 TEX. ADMIN. CODE § 24.277(a) (requiring owner who intends to bill tenants for allocated utility service to "register with the commission"). Another of these conditions requires the owner to perform an audit for water leaks and repair any leaks. *See* TEX. WATER CODE § 13.506(a) (providing that before owner "may implement a program to bill tenants" for "allocated water service," owner must "perform a water leak audit" and "repair any leaks found"); 16 TEX. ADMIN. CODE § 24.287(b)(2) (implementing statutory audit and repair requirement).

After Mendez sued alleging these violations, the legislature amended section 13.505 of the Water Code. Now, it no longer provides for the recovery of three times the amount of any overcharge, civil penalty equal to one month's rent, reasonable attorney's fees, or court costs. *See* TEX. WATER CODE § 13.505. In addition, it now gives the commission exclusive jurisdiction over violations. *Id.* § 13.505(b).

Based on the version of section 13.505 of the Water Code in effect when he filed suit, Mendez moved for class certification. Before ruling on certification, the trial court denied IMT's motions for summary judgment, which challenged Mendez's claims on various grounds. Afterward, the trial court certified two classes.

The trial court defined the first class as all Texas residents who are or were residential tenants of the three IMT apartment complexes and were charged and paid at least one $3 "utility service fee" assessed on a monthly water and sewer utility bill

from Community Conservation Solutions during a class period of several years. The trial court defined the claim for members of this class as being for the violation of the Public Utility Commission rules barring an apartment owner from passing along charges not assessed by the public utility, which was actionable under the version of section 13.505 of the Texas Water Code in effect when Mendez filed his suit.

The trial court defined the second class as all Texas residents who are or were residential tenants of IMT Pavilion Place and were charged and paid water and sewer fees during the same class period of several years. The trial court defined the claim for members of this class as being for the violation of the Public Utility Commission rules barring an apartment owner from collecting water and wastewater fees from tenants before registering with the commission and conducting an audit for water leaks and repairing any water leaks found, which was actionable under the version of section 13.505 of the Texas Water Code in effect when Mendez filed his suit.

With respect to each class, the trial court identified several issues of law or fact that were common to the class members. The trial court found that the class-action requirements regarding numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied. *See* TEX. R. CIV. P. 42(a), (b)(3). And the trial court appointed Mendez as the class representative for both classes.

Though the trial court's certification order recites that the court has a thorough understanding of parties' claims and defenses and how they will be tried, the order

does not state the elements of IMT's counterclaims or defenses. *See* TEX. R. CIV. P. 42(c)(1)(D)(i) (requiring that order granting certification state these elements).

IMT appealed, we affirmed, and the supreme court vacated our judgment and remanded the case for us to reconsider our judgment in light of a trilogy of recent class-action decisions issued by the court. *See IMT Pavilion III LLP v. Mendez*, No. 01-18-00980-CV, 2020 WL 1943037 (Tex. App.—Houston [1st Dist.] Apr. 23, 2020) (mem. op.), *judgm't vacated*, 676 S.W.3d 112 (Tex. 2023) (per curiam). The parties have since filed supplemental briefs that address how these new decisions affect our prior opinion and judgment and identify the disputed issues on remand.

## DISCUSSION

### I. Motion to Dismiss

On remand, IMT has moved to dismiss the suit for lack of subject-matter jurisdiction. IMT argues that the legislature has since amended the dispositive statutory provision at issue, section 13.505 of the Texas Water Code, so that the Public Utility Commission now has exclusive jurisdiction over water-billing disputes. According to IMT, this legislative amendment is retroactive and therefore deprives the district court and any other state court of jurisdiction to hear this suit.

### A. Standard of review

Whether an administrative agency has exclusive jurisdiction and thereby divests courts of subject-matter jurisdiction is a question of law we review de novo.

7

*Oncor Elec. Delivery Co. v. Chaparral Energy*, 546 S.W.3d 133, 138 (Tex. 2018).

## B. Applicable law

Subject-matter jurisdiction "is essential to the authority of a court to decide a case." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). Thus, subject-matter jurisdiction cannot be waived by the parties, who may assert lack of such jurisdiction for the first time on appeal. *Id.* When subject-matter jurisdiction is in doubt, a court must confirm its jurisdiction on its own motion if neither party challenges jurisdiction. *Haynes & Boone, LLP v. NFTD*, 631 S.W.3d 65, 71 (Tex. 2021); *Am. K–9 Detection Servs. v. Freeman*, 556 S.W.3d 246, 260 (Tex. 2018).

When an administrative agency has exclusive jurisdiction, a claimant must exhaust his administrative remedies before he can sue in court. *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 617–18 (Tex. 2023); *see also Cash Am. Int'l v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000) (indicating that suit after exhaustion of administrative remedies is confined to judicial review of agency's action in conformity with statute affording review). Unless the claimant has exhausted his administrative remedies, a trial court lacks subject-matter jurisdiction to hear claims with issues falling within the agency's ambit. *CPS Energy*, 671 S.W.3d at 618. When this is the case, the trial court must dismiss these claims without prejudice. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 227 (Tex. 2002).

## C.    Analysis

In the Supreme Court of Texas, IMT moved to dismiss this suit for lack of subject-matter jurisdiction on the same ground it raises in its present motion. The supreme court denied IMT's motion. IMT concedes that the supreme court did so. But IMT argues that the supreme court's denial of its jurisdictional motion is not binding because the court did so via "a mere postcard." We reject IMT's argument.

Texas appellate courts often dispose of motions by postcard without further written order and unaccompanied by an opinion explaining the disposition. Because a postcard summarily informs the parties of the court's decision, often stating no more than that a given motion is denied without further elaboration, the basis for the court's decision regarding a motion may be unclear to the parties in many cases.

But this is not entirely true of motions challenging subject-matter jurisdiction. Because an appellate court must confirm its own jurisdiction when it is in doubt, the denial of a motion challenging subject-matter jurisdiction over the suit necessarily represents a decision by the court that subject-matter jurisdiction exists. This remains true even when the decision consists of a summary postcard denial because a court cannot simply decline to decide threshold jurisdictional questions. *See Haynes & Boone*, 631 S.W.3d at 70–71 (resolving first whether court had jurisdiction on its own motion because issue was in doubt even though neither side raised issue).

9

Here, the supreme court denied IMT's motion to dismiss. On remand, we have no choice but to abide by the supreme court's decision. Like all courts, we are obliged to ensure our own jurisdiction. But this does not entail the authority to reexamine a jurisdictional issue that the supreme court has already decided. *See Lubbock Cty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (admonishing that court of appeals cannot abrogate supreme court's decisions); *KIPP Tex., Inc. v. Doe #1*, 649 S.W.3d 850, 854 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (stating that we must apply supreme court's decisions faithfully).

We acknowledge that the facts or law may materially change over time in ways that require a court to reexamine whether subject-matter jurisdiction continues to exist. But neither the facts nor the law have materially changed since the supreme court denied IMT's motion to dismiss. Here, IMT merely asks us to grant the same jurisdictional motion that it unsuccessfully asserted in the supreme court. We cannot do so. *See Dallas Area Rapid Transit v. Amalgamated Transit Union Local No. 1338*, 273 S.W.3d 659, 666 (Tex. 2008) (noting that binding nature of supreme court's decisions is "fundamental to the very structure of our appellate system").

Nor is this suit the sole one in which the supreme court has summarily rejected the jurisdictional argument that Mendez makes here. The same counsel who represents IMT in this lawsuit previously petitioned our court for a writ of mandamus in another class-action lawsuit that likewise involves claims asserted

10

under the pre-amendment version of section 13.505 of the Water Code. In that petition, counsel asserted the same jurisdictional position Mendez now asserts, specifically that the amendment of section 13.505 deprived the trial court of subject-matter jurisdiction. Another panel of this court denied the petition in that case. *See In re Mosaic Baybrook One*, No. 01-24-00066-CV, 2024 WL 442144 (Tex. App.—Houston [1st Dist.] Feb. 2, 2024, orig. proceeding) (per curiam) (mem. op.).

After we denied mandamus relief in the *Mosaic Baybrook One* litigation, counsel petitioned the supreme court for a writ of mandamus on the same jurisdictional ground. The supreme court denied the petition without opinion. Hence, the supreme court has considered and rejected the jurisdictional argument Mendez makes more than once. Its determination constrains us to reject this argument too.

We deny IMT's motion to dismiss for lack of subject-matter jurisdiction.

## II.    Class-Certification Order

Barring dismissal of Mendez's entire suit for lack of subject-matter jurisdiction based on the intervening amendment of the Water Code, IMT maintains the trial court erred in its certification order in three ways. First, IMT argues that Mendez's Class 2 claims concerning failure to register and conduct a leak audit did not result in an overcharge and thus do not allege an injury-in-fact. Absent an injury-in-fact, IMT reasons, Mendez and the other Class 2 members lack standing to assert these claims. Second, IMT argues that even if the preceding defect is not one of

11

standing and does not implicate jurisdiction, it renders the Class 2 claims incapable of certification because they fail as a matter of law. Third, IMT argues that the trial court erred in failing to address each of its counterclaims and defenses in the order, which is a prerequisite to certification. With the exception of this last argument, none of IMT's challenges concern certification of the Class 1 claims, presumably because the supreme court upheld the certification of a like claim in *Simien*. 674 S.W.3d at 251–65. Nor does IMT challenge any other Rule 42 requisites of class certification.

### A.    Plaintiff's Standing to Assert Class 2 Claims

#### 1.    Standard of review

We review standing, which is a component of subject-matter jurisdiction, de novo. *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

#### 2.    Applicable law

Under the Texas Constitution, a plaintiff must have standing to sue for a claimed injury. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018). To have standing to sue in the constitutional sense, a plaintiff must, among other things, show he has in fact been injured. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 398 (Tex. 2022). The plaintiff must show he has suffered an injury "that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* A plaintiff's injury is particularized if it affects him in "a personal and individual way." *Data Foundry v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021).

12

### 3. Analysis

IMT argues that its failure to register with the commission and to conduct an audit for water leaks are "bare procedural" rule violations that did not injure Mendez or the other Class 2 members. IMT reasons that the applicable version of section 13.505 of the Water Code, which allows "three times the amount of any overcharge," necessarily limits liability to instances in which there has in fact been an overcharge. Because Mendez and the other Class 2 members do not allege they paid more than they actually owed for their water and wastewater use as a result of IMT's failure to register or conduct a water leak audit, IMT posits they lack an injury-in-fact.

At the outset, we note that it remains an open question whether the Texas Constitution's standing requirement of injury-in-fact applies when a statute creates a private right of action and the plaintiffs fall within the class of persons authorized to sue. *See Dohlen*, 643 S.W.3d at 398–99 (declining to decide this issue of first impression because another jurisdictional issue required remand to replead). However, because we conclude below that Mendez and the other Class 2 members have shown an injury-in-fact, if they are required to do so, we need not reach this additional jurisdictional issue, which the parties have not raised or briefed.

We reject IMT's standing argument because, properly understood, IMT's argument concerns the correct interpretation of the Water Code, not standing.

Mendez and the other Class 2 members allege that, absent registration and audit, the amount IMT could lawfully pass along to tenants for water and wastewater use was zero. *See* TEX. WATER CODE § 13.506(a)(2) (requiring apartment owner who intends to bill tenants for allocated utility service to audit for water leaks and repair leaks); 16 TEX. ADMIN. CODE §§ 24.277(a), 24.287(b)(2) (restating statutory audit and repair requirement and additionally requiring registration with commission). That is, they allege that every cent they were billed and paid for water and wastewater use was unlawful and thus constitutes an actionable overcharge. These overcharges—payments they made to IMT that it was not legally entitled to collect—constitute an injury-in-fact sufficient to show constitutional standing.

IMT rejoins that under a proper interpretation of the Water Code, an "overcharge" is limited to situations in which tenants are charged for more than they legally owe but excludes instances in which they legally owe none of the charges made. But this argument is about the merits of the claims Mendez and the other Class 2 members make, not about their constitutional standing to make these claims.

In *Data Foundry*, the plaintiff, a customer of a city-owned electric utility, sued the city, claiming the rates charged by the utility were illegal. 620 S.W.3d at 693. The city moved to dismiss on the basis that the plaintiff lacked standing because it had not suffered a particularized injury. *Id.* But the supreme court concluded that the plaintiff alleged a sufficiently particularized injury to satisfy the constitutional

14

standing requirement. *Id.* at 696–98. In particular, the court reasoned that the plaintiff's claim that it suffered financial harm in having to pay a particular sum of money in excess of what it should have had to legally pay showed standing. *Id.*

For purposes of constitutional standing, the registration and audit claims made by Mendez and the other Class 2 members are materially indistinguishable from those in *Data Foundry*. The mere fact that Mendez and the other Class 2 members allege that they did not legally owe any of the water and wastewater costs for which they were billed, rather than some portion of that amount, does not negate the nature of the pocketbook injury they allege. *See McLane Champions v. Houston Baseball Partners*, 671 S.W.3d 907, 913 (Tex. 2023) (holding that payment of money is type of quintessential pocketbook injury that easily satisfies injury-in-fact requirement). That they may not be entitled to recover for some other reason—such as the proper interpretation of "overcharge" as used in the Water Code—does not deprive them of standing. *See id.* (reiterating that other restrictions on right to recover, like assignment of one's interest, do not implicate standing in jurisdictional sense); *see also DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008) (stating that "plaintiff does not lack standing simply because he cannot prevail on the merits").

One of the three recent class-action decisions rendered by the supreme court reinforces our conclusion that Mendez and the other Class 2 members have standing. In *Simien*, the court noted that the parties disagreed as to whether disputed water-

related fees could be properly charged under the lease and whether they could be included in charges billed for utility service under the Water Code, but it held that these disagreements went "to the merits, not to subject-matter jurisdiction." 674 S.W.3d at 251. This is equally true of IMT's insistence it could charge tenants without legal recourse despite its failure to comply with commission's rules regarding registration and audits. Like the class representative and class members in *Simien*, Mendez and the other Class 2 members do not just complain of the deprivation of a mere procedural right but also a concrete interest affected by the deprivation—payment of money for charges that were not lawfully billed. *See id.*

We overrule IMT's issue regarding lack of standing and jurisdiction.

## B. Whether Class 2 Claims Are Facially Defective

### 1. Standard of review

When a party asserts that a claim is not amenable to certification because it is facially defective, the party is asserting the cause of action is legally baseless. *See Berry*, 667 S.W.3d at 284–86 (identifying question presented as "whether a class claim that is facially defective as a matter of law may nevertheless survive a class-certification appeal and proceed towards futile and wasteful class-wide litigation" and holding that "legally baseless" claims, those "on which the class could never validly recover regardless of the facts," can neither be certified nor survive appeal of certification). Because whether a claim is legally baseless presents a question of

16

law, we review this issue de novo. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699–700 (Tex. 1994) (holding that appellate court reviews de novo whether pleading states legally valid claim in context of suit in which trial court granted summary judgment on ground of pleading deficiency after sustaining special exceptions).

### 2. Applicable law

In *Berry*, one of its recent class-action decisions, the supreme court held that, when a defendant properly raises a dispute about the correct understanding of the substantive law governing the plaintiff's claim on appeal, the appellate court must address this dispute in its review of a trial court's certification order. 667 S.W.3d at 282. This is because evaluating whether a claim is suitable for class certification requires "some coherent understanding of the law governing the claim." *Id.* at 283. While a class-certification appeal is not an occasion for deciding the merits of the suit in general, if a careful evaluation of the law governing a plaintiff's claim shows that the claim is legally baseless, then the claim is not appropriate for certification. *Id.* at 285–86. When a trial court certifies a legally baseless claim, we must reverse. *See id.* at 287–88 (reversing because statute did not authorize claim asserted).

### 3. Analysis

IMT's position that the Class 2 claims are facially defective essentially rests on the same argument as its position that Mendez and the other Class 2 members lack standing. IMT maintains that its violation of the commission's rules regarding

17

registration and audits did not result in its tenants being overcharged for their water and wastewater use as the term "overcharge" is used in the Water Code. And while this argument does not implicate standing, if IMT is correct in its interpretation of the Water Code, then the Class 2 claims are legally baseless and thus inappropriate for certification. *See id.* at 284 (clarifying that pertinent "question is not whether the plaintiff has pleaded and argued a claim that, if it exists, would be suitable for class resolution," but rather "whether, under the 'applicable substantive law,' the claim— as the law, not the plaintiff, defines it"—is certifiable). Based on our evaluation of the law, we agree that the Class 2 claims are facially defective or legally baseless.

The version of section 13.505 of the Water Code in effect when Mendez filed suit made an apartment owner liable to tenants for "any overcharge" resulting from its violation of Public Utility Commission rules, but this version did not define "overcharge." Nor is a technical usage of this term apparent from context. Therefore, consistent with customary interpretive rules, we presume the legislature intended that "overcharge" bear its commonly understood meaning. *See Simien*, 674 S.W.3d at 253 (stating that when legislature has not defined word that has not otherwise acquired technical or particular meaning, courts are to give statutory language its common, ordinary meaning, unless context imparts more precise meaning to language or common, ordinary meaning yields absurdity); *In re Ford Motor Co.*,

442 S.W.3d 265, 272 (Tex. 2014) (stating "high level of linguistic clarity" is necessary to find legislature intends marked departure from ordinary meaning).

As commonly understood, the noun "overcharge" means "an excessive charge for goods or a service" and the verb "overcharge" means to "charge (someone) too high a price for goods or a service" or to "charge someone (a sum) beyond the correct amount." NEW OXFORD AMERICAN DICTIONARY 1248 (3d ed. 2010); *see also Tex. State Bd. of Med. Exam'rs v. Birenbaum*, 891 S.W.2d 333, 337 (Tex. App.—Austin 1995, writ denied) (applying common definition of "overcharging"—"charging 'excessively or beyond a due rate'"—because statute did not define term). That some amount is due and owed, but less than billed, is inherent in all these definitions.

But Mendez and the other Class 2 members do not allege that IMT charged them an excessive amount, too high a price, or a sum beyond the correct one for their water and wastewater use as tenants. Rather, they allege that by failing to register with the Public Utility Commission and conduct an audit for water leaks, IMT was not entitled to bill them for any amount. Their complaint is that IMT charged them at all, not that IMT overcharged them for their actual water and wastewater use. This complaint is not actionable under former section 13.505, which made apartment owners liable for rules violations solely when they resulted in "any overcharge."

Another Water Code provision reinforces our conclusion that "overcharge" bears its commonly understood meaning in the version of section 13.505 in effect

19

when Mendez sued. In relevant part, former section 13.505 made rules violations regarding "nonsubmetered master metered utility costs" actionable. Another provision of the Water Code, former section 13.5031(3), directed the commission to adopt rules regarding these costs that barred apartment owners from imposing "additional charges on a tenant in excess of the actual charges imposed on the owner" for utility consumption. *See Simien*, 674 S.W.3d at 247, 254–55 (quoting former section 13.5031(3) and concluding it reflected legislative choice to bar apartment owner from charging more than its own water and wastewater costs). Together, these two provisions show a legislative purpose to police charges in excess of a tenant's actual water and wastewater use. Hence, the focus on "any overcharge."

In contrast, the interpretation advanced by Mendez and the other Class 2 members would allow a tenant to sue for any rule violation regarding nonsubmetered master metered utility costs whatsoever, even if, as here, the tenant does not allege he was overcharged as a result of the rule violation. Nothing in the version of the Water Code applicable here suggests a legislative intent to create a private right of action even when the water and wastewater charges billed to a tenant by an apartment owner accurately reflect the tenant's utility consumption. We cannot presume the legislature intended to authorize the enforcement of rules promulgated under the auspices of the Water Code through private suits even in the absence of actual damages when nothing in the Code expresses such an expansive and

20

unconventional intent. *See Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex. 1982) (stating court would not presume legislature meant to alter generally applicable rule given that statute in question did not contain provision saying so).

Mendez and the other Class 2 members contend that former section 13.505 is indeed this expansive. For support, they rely on the supreme court's decision in *Simien*, in which the court rejected certain narrow statutory interpretations proposed by the defendants in that case in part because former section 13.505 states it applies to rule violations "regarding" nonsubmetered master metered utility costs. *See* 674 S.W.3d 254 (noting that "regarding" is an expansive term synonymous with similar words or phrases like "respecting," "concerning," and "referring to"). But when the court made this observation about the statute, it did so in the context of analyzing a claim that resembles the Class 1 claims in this lawsuit, which allege an overcharge, not the broader Class 2 claims in question, which do not. *See id.* at 252–62 (holding that claim alleging apartment owner overcharged tenants by billing for more than its actual utility costs was actionable under former section 13.505). *Simien* did not address, let alone decide, the issue before us: whether the scope of former section 13.505 is so expansive that it authorizes claims that do not involve overcharges. And nothing in *Simien* indicates the statute is in fact as broad as Mendez advocates.

To the extent Mendez contends the literal language of section 13.505, standing alone and interpreted in isolation from the rest of the Water Code, could compass

the expansive interpretation he advocates, we disagree because his proposed interpretation does not account for the "any overcharge" language of former section 13.505. Nor does Mendez's proposed interpretation harmonize that section with former section 13.5031(3), which evinces a legislative intent to ensure the promulgation of rules prohibiting an apartment owner from imposing utility service costs on tenants in excess of the actual charges for utility consumption. Thus, even if we thought section 13.505 itself was susceptible to his interpretation, we would decline to "decide the scope or meaning of statutory language by a bloodless literalism in which text is viewed as if it had no context." *Univ. of Houston Sys. v. Lubertino*, 95 S.W.3d 423, 428 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

We sustain IMT's issue as to the facial defectiveness of Class 2.

### C.     Failure to Address Counterclaims and Defenses

### A.     Standard of review

We review a claim that the trial court erred in failing to adequately address the parties' claims and defenses in a certification order for an abuse of discretion. *See Cessor*, 668 S.W.3d at 624–27 (holding trial court abused discretion in certifying class without listing and analyzing elements of defendant's defenses in order).

### B.     Applicable law

When a trial court concludes a claim is amenable to class certification because common questions of law or fact predominate over individual ones, and a class

action is superior to other methods of adjudication, the court's certification order must state "the elements of each claim or defense asserted in the pleadings." TEX. R. CIV. P. 42(c)(1)(D)(i). The certification order must also evaluate the claims and defenses to ensure the common questions predominate over individual ones. *Cessor*, 668 S.W.3d at 624. Compliance with this requirement is indispensable, and a trial court's failure to do so "is harmful by its nature," unless a party has abandoned a particular claim or defense or the trial court has already disposed of a claim or defense in some fashion, like summary judgment. *Simien*, 674 S.W.3d at 264–65.

## C.    Analysis

In its certification order, the trial court does not address IMT's counterclaims and defenses. Mendez concedes the trial court erred in this respect. We agree.

We sustain IMT's issue regarding the order's failure to state the elements of its live counterclaims and defenses and evaluate how they affect predominance.

## CONCLUSION

We deny IMT's motion to dismiss the suit for lack of jurisdiction.

We hold that:

(1) the Class 2 claims show an injury-in-fact and Mendez and the other class members therefore have constitutional standing to assert these claims; but

(2) the Class 2 claims fail as a matter of law because the Water Code does not authorize recovery for these claims and they are thus uncertifiable; and

(3) the certification order did not state the elements of IMT's counterclaims or defenses and failed to adequately address how they affect certification.

Accordingly, we reverse the trial court's certification order and remand this cause for further proceedings consistent with our opinion.


                                        Gordon Goodman
                                        Justice

Panel consists of Justices Goodman, Landau, and Rivas-Molloy.